JOSIAH LACEY, ELI SMITH, EZRA GREGORY, jun. GRISSEL HAWLEY and ABIJAH HAWLEY, executors of *Aaron Hawley*, STEPHEN HAWLEY, DANIEL HAWLEY, CAROLINE HAWLEY, SUSAN HAWLEY, JANE ELIZABETH HAWLEY and MATILDA HAWLEY, *against* AGUR TOMLINSON :

IN ERROR.

THIS was a bill in chancery, brought by the defendant in error against the plaintiffs, praying for liberty to redeem certain lands.

It was stated in the bill, that on the 8th day of *October*, 1807, *Richard Hubbell* was seised in fee, of about 22 acres of land in the town of *Fairfield*, being the land in question; and on the same day, mortgaged the land to *Tomlinson*, to secure the payment of 487 dollars, 33 cents; that *Hubbell*, on the 17th day of *March*, 1808, mortgaged the same land to *Eli Smith*, to secure the payment of 368 dollars, 23 cents; that *Tomlinson*, on the 7th day of *November*, 1808, for the consideration of 160 dollars, (the residue of his debt against *Hubbell*, having been previously paid,) released his right and title to the land, to *Smith*; that *Hubbell*, on the 25th day of *November*, 1808, released his interest in the land to *Josiah Lacey*; that *Smith*, on the 28th day of *November*, deem the land, on paying what is due in equity to such third person.

A mortgagee, by releasing to a third person, all his right in the mortgaged premises, does not thereby, discharge his lien upon the land, acquired by attaching it as the property of the mortgagor, prior to the execution of the release; and after final judgment in the action against the mortgagor, may re-

June, 1811.

LACEY
*v.*
TOMLINSON.

1808, also released his right and title to *Lacey;* and that on the 1st day of *November,* 1808, prior to the date of *Hubbell's* release deed to *Lacey,* and subsequent to the date of his mortgage deed to *Smith,* the defendant in error, in an action in his favour, against *Hubbell,* attached the land in question, as the property of *Hubbell,* and on the 20th day of *May,* 1809, within four months after final judgment in such action, caused the land to be levied upon, appraised and set off in execution, in part satisfaction of his debt; subject, however, to the equitable interest of *Lacey,* acquired by virtue of *Smith's* release deed to him; and that *Tomlinson,* by virtue of the levy of his execution, had acquired the right of the equity of redemption.

During the pendency of the original bill, *Lacey,* on the 4th day of *January,* 1809, conveyed one moiety of the mortgaged premises, to *Ezra Gregory,* jun. and the other moiety to *Aaron Hawley;* and afterwards, before the final decree, *Hawley* died, leaving *Grissel Hawley,* his widow, who with *Abijah Hawley,* were his executors, and *Stephen Hawley, Daniel Hawley, Caroline Hawley, Susan Hawley, Jane Elizabeth Hawley,* and *Matilda Hawley,* his children and only heirs at law;—all of whom were cited in, and made parties to the bill.

The defendants, having prayed oyer of the release deed from *Tomlinson* to *Smith,* pleaded in abatement, for the insufficiency of the bill. The deed produced on oyer, was of the following tenor, to wit : " To all people to whom these presents shall come," &c. " Know ye, that I *Agur Tomlinson,* of *Huntington,* in the county of *Fairfield,* in consideration of one hundred and sixty dollars, received to my full satisfaction of *Eli Smith,* of *Stratford,* in said county, do remise, release, and forever quit-claim unto the said *Eli Smith,* and unto his heirs and assigns forever, all such *right, title, claim and demand whatever,* as I the said releasor have, or ought to have, in, or to a piece of land in *Fairfield,*" &c. " To have and hold the premises, with all their appurtenances, unto the said releasee, and his heirs and assigns forever ; *so that neither I the releasor, nor my heirs, nor any other person under me, or them, shall*

*hereafter have any claim, right or title in, or to the premises, or any part thereof ; but, therefrom, I and they are, by these presents, forever barred and secluded,"* &c.

The Superior Court adjudged the bill sufficient ; and having found the facts therein stated, to be true, ordered and decreed, that if the plaintiff, within a limited period, should pay to the clerk of the court, for the use of the defendants, the sum of 557 dollars, 97 cents, with interest from the time of liquidating the account, to the time of payment, all the right and title of the defendants, and each and every of them, both in law and equity, should vest in the plaintiff, and his heirs, immediately on such payment.

To reverse the judgment and decree of the Superior Court, the present writ of error was brought.

In addition to the general error, the insufficiency of the bill was specially assigned as cause of error.

*Daggett* and *J. Backus*, for the plaintiffs in error, contended, that *Tomlinson*, from the particular expressions used in his deed to *Smith* released the right or lien, acquired by virtue of his attachment, as well as his equitable interest, derived from the mortgage deed of *Hubbell*. A general release will always operate upon an estate, which, upon some contingency, may be hereafter acquired ; provided, the contingency be not too remote. *Lampet's* case, 10 *Co.* 47. *a.* 53. The deed of *Tomlinson* to *Smith*, may be deemed a covenant to the grantee, against any claim whatever, in favour of the grantor ; and will enure to the benefit of the former, by extinguishing the lien acquired by the latter, by virtue of his attachment.

*R. M. Sherman*, argued for the defendant. He cited *Co. Lit.* 264. *b.* 265. *a.* 265. *b.*

SWIFT, J. The question in this case, is, whether a mortgagee, by releasing all right and interest in the mortgaged premises, discharges a lien upon land, acquired by a previous attachment ?

No right can pass by a release, but what exists at the

time of the release made. *Co. Lit.* 265. *a.* An attaching creditor acquires no title, right or interest in lands, by force of an attachment. The attachment has no effect but to take the land into the custody of the law, to secure it against the alienation of the debtor, and the attachment of other creditors, and to hold it to be levied upon by an execution, when judgment shall have been obtained. It is by force of the levy of the execution, that any right or title to the land is acquired. Until that time, it remains in the debtor, and he can prevent the attaching creditor from ever acquiring any title, by the payment of the debt. Of course, the attaching creditor has but a *mere possibility* of acquiring a right; which cannot be released.

This case is precisely analogous to the case of the conusee of a statute in *England. Co. Lit.* 265. *b.* A conusance there, gives a similar right to levy an execution on lands, as an attachment here ; but if the conusee *release to the conusor,* all his right in the land, yet afterwards, he may sue execution. *Barrow* v. *Gray, Cro. Eliz.* 551. *Lampets'* case, 10 *Co.* 47. relied upon by the counsel for the plaintiff, is not *ad idem.* That was a devise of a term of 5000 years, to *John Morrice,* during life, and after his decease, to *Elizabeth,* who released to *John,* after he came into possession ; and the release was determined to be valid. Here, *Elizabeth* acquired a right, by the devise, subject to be defeated by the contingency of her dying before *John ;* but, if she survived him, the right originated from the devise. This was a contingent interest, which might, by possibility have been defeated ; but still, it was an interest that could be released. But in the case under consideration, no right to the land, was created by the attachment. There was merely a possibility, that a right might have been created, by the levy of the execution ; but the right would then originate with the levy, and being a right or interest, to be acquired by a future act, could not be released.

I am of opinion, that there is no error.

In this opinion, all the judges concurred.

Judgment affirmed