*Litchfield*, June, 1848.

Bull
*v.*
Allen.

| 19 | 107 |
|----|-----|
| 61 | 396 |
| 19 | 107 |
| 66 | 409 |

## SMITH and wife *against* PENDELL.

*A*, after disposing of a portion of his estate by will, devised to his grand-daughter *E* all the remainder of his lands and estate, hoping she might live to enjoy the same; but if she should die leaving no natural heirs, his will was, that the property should go to *C*, the mother of *E*. *E* entered into possession of the lands thus devised to her, and while she was so in possession, *C* executed and delivered to her a quit-claim deed, releasing to her all right, title and interest, which *C* had, either in possession, remainder, reversion, or by bequest or under the will of *A*, or in any other way. *E* afterwards died, having never had issue. In an action of ejectment, brought by *C*, against the devisee of *E*, it was held, 1. that a mere possibility of interest could neither be granted, devised nor released; 2. that *C*, in this case, had not such a vested present interest in the estate in question, as could, by her deed, be conveyed to a stranger; 3. that *C*, however, had, under the will of *A*, a contingent remainder, the limitation over being to a person certain, upon an event entirely uncertain; 4. that *E*, when she received the deed from *C*, being tenant-in-tail in possession, it was effectual to perfect the title of *E* against any future claim of *C* under the will of *A*.

The quit-claim deeds in common use in this state operate as primary or original conveyances.

THIS was an action of ejectment for three parcels of land lying in *Stamford*. The defendant pleaded the general issue, which was closed to the court.

The cause was tried at an adjourned term of the superior court in *Fairfield* county, in *April* 1847; when the following facts were found.

On the 7th of *March* 1815, *David Smith*, who then, and ever afterwards until his death, owned the demanded premises, made his last will and testament, in which, after devising certain estate to his daughter-in-law, *Hannah Smith*, widow

*Fairfield,*
July, 1848.

Smith
*v.*
Pendell.

of his deceased son, *Ezra Smith,* he devised as follows: "And to my beloved grand-daughter, *Elizabeth Smith,* I do give all the remainder of my lands and estate, hoping she may live to enjoy the same; but if the said *Elizabeth* should die, leaving no natural heirs, my will is, that the same shall go to my said daughter-in-law *Hannah Smith,* mother of said *Elizabeth,* and to be her own," &c. After the decease of the testator, *viz.* on the 24th of *April* 1820, his will was duly proved and established. The demanded premises are a part of the estate mentioned in the will as devised to said *Elizabeth Smith ;* who after her grand-father's death, went into possession thereof, and continued in possession until the 1st of *January* 1842, when she died, without ever having had a child. While she was so in possession, *viz.* on the 26th of *October,* 1841, said *Hannah Smith,* and her husband *Eber Smith,* executed and delivered to said *Elizabeth,* then the wife of *William Pendell,* since deceased, a quit-claim deed of all their right, title and interest, in the lands in question, which the releasors, or either of them, had, either in possession, remainder, reversion, or by bequest, or under the will of *David Smith,* or in any other way. For this deed, though purporting to be for the consideration of one dollar, no valuable consideration was in fact paid. On the same 26th day of *October* 1841, said *Elizabeth* made her will, and thereby devised said lands to *William Pendell,* her husband, in fee-simple. After her death, *William Pendell* went into possession of the premises, and continued in possession until his death, in *January* 1846. In the mean time, he had married another wife, named *Elizabeth ;* to whom, by will, dated *April* 21st, 1845, he devised the premises in fee-simple. This devisee, after the death of her husband, went into, and has ever since continued in, possession.

The present action was brought by *Eber Smith* and *Hannah,* his wife, claiming the premises in her right, against *Elizabeth Pendell,* claiming title under the will of her late husband, *William Pendell.*

Upon the facts above stated, the case was reserved, for the advice of this court as to what judgment should be rendered in the suit.

*Hawley,* for the plaintiffs, contended, 1. That *Hannah*

*Smith's* interest, during the life of *Elizabeth*, was, in every respect, *contingent*, not merely in regard to possession or enjoyment, but in regard to right and title. So long as *Elizabeth* lived, there was a possibility of issue ; and until her death, it could not be known whether Mrs. *Smith* would have any interest in the land, or not. It was a *naked possibility.*

2. That having only a naked possibility, during this period, she had no estate, which she could, by any instrument whatever not amounting to an estoppel, *convey* or *release* to *Elizabeth*. A quit-claim deed is clearly no estoppel. *Cruise's Dig. tit.* Remainder. *c.* 7. *s.* 22. *Co. Litt.* 265. *a.* n. 212. by *Butler. Litt. sec.* 445, 6. *Lacey* v. *Tomlinson*, 5 *Day* 77. *Dart* v. *Dart*, 7 *Conn. R.* 250. 256. 5 *Bac. Abr.* 704. (*Gwil.* ed.) *tit.* Release. H. *Shep. Touch.* 321.

3. That consequently, on the death of *Elizabeth*, " leaving no natural heirs," *i. e.* without issue, the property in question vested in *Hannah Smith*, under the will of *David Smith.*

*Dutton* and *Ferry*, for the defendant, contended, 1. That, by the will of *David Smith*, an estate-tail in his grand-daughter *Elizabeth*, was created by implication, with contingent remainder to the plaintiff, *Hannah Smith. Hudson* v. *Wadsworth*, 8 *Conn. R.* 358. and cases there cited.

2. That the interest of *Hannah Smith* under the will, was extinguished, by the quit-claim deed executed by her and her husband, on the 26th of *October*, 1841. In the first place, the terms of the deed undoubtedly embrace whatever interest she then had. The words are—" all right, title, claim and demand whatever, which we, the releasors, or either of us, have, or ought to have, either in possession, remainder or reversion, or by bequest, or under the will, of *David Smith*, or in any other way." Secondly, *Hannah Smith* had, at this time, a present fixed interest, which equity would protect. *Hudson* v. *Wadsworth*, 8 *Conn. R.* 348. It was assignable in equity. 1 *Fearne*, 536. *Wright* v. *Wright*, 1 *Ves.* 409. It was also transmissible to heirs, and deviseable. 1 *Fearne*, 534. 544. Thirdly, the authorities are uniform, that a release to the terre-tenant, in which all others join who have any interest in the estate, present or future, vested or contingent, is effectual to transfer such interest, whatever its

*Fairfield,*
*July, 1848.*

Smith
*v.*
Pendell.

nature may be, and to bar all future claims by such releasors. *Co. Litt.* 268. *a. Lampet's* case, 10 *Co.* 48. *Wright* v. *Wright*, 1 *Ves.* 411. 2 *Fearne*, 529. n. *Goodtitle* d. *Edwards* v. *Bailey*, *Cowp.* 597. 2 *Wooddes.* 212.

3. That the giving of such deed and the subsequent acquiescence on the part of the plaintiffs in the possession of the releasee therein named, and of her devisee, both claiming title under it, constitute an estoppel *in pais,* by which the plaintiffs are precluded from setting up a claim of title. *Brown* v. *Wheeler*, 17 *Conn. R.* 345. 353. *Roe* v. *Jerome*, 18 *Conn. R.* 138. *Middletown Bank* v. *Jerome*, 18 *Conn. R.* 443.

CHURCH, Ch. J. *David Smith* was the owner of the land in controversy until his death ; and by his last will and testament, dated *March* 7th, 1815, he devised it in the following language : " And to my beloved grand-daughter, *Elizabeth* " *Smith*, [afterwards the wife of *William Pendell*,] I do " give all the remainder of my lands and estate, hoping she " may live to enjoy the same ; but if the said *Elizabeth* should " die, leaving no natural heirs, my will is, that the same shall "go to my said daughter-in-law *Hannah Smith*, mother of " said *Elizabeth*, [one of the plaintiffs] and to be her own," &c.

Under this will, the said *Elizabeth* entered into the possession of the premises, and having married *William Pendell*, she continued in possession until her death ; and while she was thus in possession under the will of *David Smith*, the said *Hannah Smith* and her husband, the present plantiffs, executed and delivered to her a quit-claim or release deed of this land, dated *October* 26th, 1841, as follows : " We do, by " these presents, remise, release and forever quit-claim unto " the said *Elizabeth* all right, title, interest, claim and demand " whatever, which we, the said releasors, or either of us, " have, or ought to have, either in possession, remainder, re- " version, or by bequest, or under the will, of *David Smith*, " or in any other way." *Elizabeth*, the grantee, died about the 1st day of *January* 1842, without ever having had a child ; and by her will, dated *October* 26th, 1841, she devised this land to *William Pendell*, her husband, in fee-simple. *William Pendell* married again, and died in *January*, 1846,

after having devised this land to his wife, the present defend-
ant. If the release or quit-claim deed from *Hannah Smith*
and her husband to the first *Elizabeth Pendell*, was effectual
to transfer or extinguish the interest of the said *Hannah* in
these premises, the plaintiffs cannot recover ; and whether it
was, is the question submitted for our advice.

This question arises under the will of *David Smith*, con-
nected with the fact, that *Elizabeth Smith* (*Pendell*) therein
named, died " leaving no natural heirs ;" upon which contin-
gency, the estate devised was to go to *Hannah Smith*, one of
these plaintiffs. But *Hannah* had executed to *Elizabeth* the
quit-claim deed before described. The claim of the plaintiff,
is, that, when that deed was executed, *Elizabeth* was alive,
and *Hannah* had no interest in the land, but only a naked
possibility, which could not be affected or conveyed, by a
release deed without covenants ; and that the interest which
afterwards arose from the death of *Elizabeth*, without chil-
dren, was an original interest in *Hannah*, not existing when
the quit-claim deed was executed, and therefore, not extin-
guished by it.

It is true, if *Hannah Smith*, when she executed her deed
of release, had nothing more than a possibility of interest,
such deed was inoperative to extinguish her future rights,
even after such a possibility had ripened into certainty ; and
though the releasee was in possession under a title ; because
a mere possibility, unaccompanied with some present interest,
can neither be granted, devised nor released ; although it may
be reached, by force of an estoppel in a deed, with covenants.
*Preston on Estates*, 76. 1 *Jarman on Wills*, 40. 4 *Kent's
Com.* 498. *Jones* v. *Perry*, 3 *Term R.* 88. *Dart* v. *Dart,*
7 *Conn. R.* 251., and the cases there cited. *Lacey* & al. v.
*Tomlinson*, 5 *Day*, 77.

We do not think *Hannah Smith* had any such vested or
present interest in this estate, as could, by her deed, be con-
veyed to a stranger ; but we believe she had, under the will
of *David Smith*, a contingent remainder. We cannot, in this
respect, distinguish this case from the case of *Hudson* v.
*Wadsworth*, 8 *Conn. R.* 348. The will which was there
the subject of construction, having given to *J. T. Hudson* and
others the residue of the testator's estate, further directed,
that in case of the decease of the said *J. T. Hudson* " with-

"out lawful heirs of his body," then the estate given to him "should be equally divided between *F.* and *H.*, and their "heirs and assigns forever." The court, in that case, held clearly, that *Hudson* took an estate tail by implication, and the limitation over to *F.* and *H.* created in them a contingent remainder. The words "*natural heirs*" and "*heirs of the body*," in a will, and by way of executory devise, are considered as of the same legal import. The cases are very numerous, which confirm this construction; many of which are referred to, in the case last cited. Here, as in that case, the limitation over was to a person certain, but upon an event entirely uncertain; which brings the case within the most approved definition of a contingent or executory remainder. In the late case of *Mackell* v. *Weeding*, 8 *Simons*, 4. Sir *L. Shadwell*, V. C. said, "I consider it to be a settled point, that whether an estate be given in fee, for life, or generally without any particular limit as to its duration, if it be followed by a devise over, in case of the devisee dying without issue, the devisee will take an estate tail." And in all such cases, the event being uncertain, if the person be certain, the remainder must be contingent. 1 *Sw. Dig.* 140. 1 *Jarman on Wills*, 488.

The right of *Hannah Smith*, therefore, was more than a naked possibility, like that of an heir apparent; it was an interest in the estate, though a contingent one. Such an interest is descendible, and if not deviseable at common law, it was made so, by the *English* statute of wills; and it may also be the subject of equitable cognizance; but it must be conceded, that by the rules of the common law, it cannot be conveyed or transferred, by a deed of bargain and sale, or of feoffment, or other common law assurance, without covenants of warranty, to a stranger to the estate. And if this conveyance from *Hannah Smith* and her husband to *Elizabeth Pendell* had been of that character, we must say, that no interest passed thereby. 2 *Preston on Estates*, 75. *Shepard's Touchstone*, by *Preston*, 29. *Jones* v. *Roe*, 3 *Term R.* 88. 1 *Sw. Dig.* 121.

But we have said, that *Elizabeth Pendell*, when she received the quit-claim deed from the plaintiffs, was tenant-in-tail in possession. This being so, this quit-claim or release deed was effectual to enlarge her estate, and to confirm the ulti-

mate interest in her, and her heirs general, if she should die without children, by creating in her, in that event, a fee-simple. And this, no doubt, was the intention of these parties. The quit-claim deeds in common use in this state, operate as primary or original conveyances; and when made to a tenant in possession, have all the legal effect of release deeds at the common law; which are defined to be a discharge or conveyance of a man's right in lands to another, that hath in them some former estate in possession. 2 *Bla. Com.* 234.

Although by the common law, neither a mere possibility, nor a chose in action, can be assigned, by deed, to a stranger; yet actual rights, though but contingent, and especially contingent remainders, may be released. The law on this subject was well understood, in the days of *Littleton*, who says: "For in every case, where he to whom the release is made, "hath the freehold in deed or in law, at the time of the release, "there the release is good." *Sec.* 447. *Co. Litt.* 265. *b.* And it is said, that such contingent rights to an estate of freehold may be released in five manners. 1. To the tenant of the freehold in fact and in law, without any privity. 2. To the person in remainder. 3. To the person who is seised of the reversion, without any privity. 4. To the person who has right only in respect of privity. 5. In respect of privity only, without right. In the present case, it is enough, that *Elizabeth Pendell*, when she received the release, was undoubtedly the tenant of the freehold, both in fact and in law; and therefore, the release was effectual to transfer all the rights of *Hannah Smith*, and to perfect the title of *Elizabeth*, against any future claim of *Hannah* under the will of *David Smith*. *Co. Litt.* 265. *a.* n. 212. by *Butler.* *Preston on Estates,* 75. *Lampet's* case, 10 *Co.* 48. *Lacey* & al. v. *Tomlinson,* 5 *Day,* 77. 3 *Bla. Com.* 324. 1 *Sw. Dig.* 121.

We must therefore advise the superior court, that judgment be rendered for the defendant.

In this opinion the other Judges concurred.

Judgment for defendant.