Chandler *v.* Dyer.

---

OLIVER P. CHANDLER *v.* ISAAC DYER.

[IN CHANCERY.]

*Mortgage. Attachment. Chancery. Parties.*

An attachment upon land creates a specific lien thereon, and vests in the attaching creditor a right in equity to redeem the land, even before judgment and levy, from a prior incumbrance, in order to make his own claim beneficial or available to himself.

He is entitled to the same right of redemption as a mortgagee has; and if not joined as a party in a suit of foreclosure upon the same land, his right to redeem is not affected by the decree.

His payment of the prior mortgage incumbrance is not regarded as a voluntary payment, but the exercise of an equitable right,—and, as against the mortgagor and all holding under him, and subsequent to his, the creditor's, attachment, the effect of the redemption is not to extinguish the mortgage so redeemed, but to keep it alive as a subsisting lien upon the land, whether the creditor pursue his attachment lien or not.

The fact that the first and third incumbrance, the attachment being the second, were held by the same person, would not give him any greater rights than the holder of the third would have if he had not held the first.

BILL IN CHANCERY. The allegations and prayer of the bill are sufficiently set forth in the opinion of the court. The case was heard upon demurrer to the bill, at the December Term, 1862, Wind-

sor county, BARRETT, Chancellor, and the bill was dismissed,—from which decree the orator appealed.

*Washburn & Marsh,* for the orator.

The defendant held a mortgage of certain premises, dated March 3d, 1857, for $478. The plaintiff attached the equity of redemption March 26th, 1857. The defendant took a second mortgage, dated February 3d, 1858, to secure $4000., which covered all the land included in the first mortgage, except one lot. A decree of foreclosure was obtained by the defendant upon the first mortgage September 30th, 1858, and before the decree became absolute, the plaintiff paid to the clerk $591.40, September 26th, 1859, which was the amount then due upon it. The bill alleges that the payment was made by the plaintiff in good faith, for the purpose of redeeming the premises from the first mortgage, and protecting the plaintiff's lien under his attachment. The defendant received and still retains the money so paid by the plaintiff. The defendant obtained a decree of foreclosure upon his second mortgage, which became absolute September 30th, 1859, and he holds the premises under that decree. The plaintiff was not made defendant in either bill of foreclosure. The plaintiff obtained judgment, June Term, 1860, and execution was issued and levied upon other property of the mortgagor.

The plaintiff now claims that the defendant should repay the amount paid by him to redeem the premises from the first mortgage.

The plaintiff by his attachment acquired a lien upon the premises, which gave to him an equitable title, as specific, if not as extensive, as that of a purchaser. *Bigelow* v. *Topliff,* 25 Vt. 273 ; *Carter* v. *Champion,* 8 Conn. 549 ; *Braley* v. *French,* 28 Vt. 552. And for the purpose of protecting his lien, he was entitled to redeem the premises from the first mortgage. It is not essential to this right that he should have had an *interest in the land;* it is sufficient that he had a legal lien upon it. 2 Story's Eq. 291, 363 ; 4 Kent, 162. And he might redeem, though not party to the foreclosure. *Lyon* v. *Sanford,* 5 Conn. 544.

It is objected in reliance upon *Nichols* v. *Holgate,* 2 Aik. 138, and *Downer* v. *Fox,* 20 Vt. 392, that the plaintiff acquired by his attachment no interest in the land which the defendant was bound to notice, and that he could not have been made party to the bill of fore-

·closure. The same doctrine prevails in Connecticut. *Lacy* v. *Tomlinson*, 5 Day, 77. Yet it is there held that the plaintiff might re-·deem. *Lyon* v. *Sanford*, 5 Conn. 344. And if he do redeem he cannot be held to be a mere volunteer, and if not, then he is subrogated to all the rights under the first mortgage. The defendant holding under the second mortgage, stands in the same relation to the plaintiff that he would have sustained if the first mortgagee had been a third person. He can claim no other or different rights, since the doctrine of tacking mortgages does not prevail in this State. The defendant is not now at liberty to deny the plaintiff's right to redeem. He has accepted the money paid for the purpose of redeeming the premises, and now claims to hold both money and land.

*Converse & French*, for the defendant.

The *attachment* did not authorize the orator to redeem in such a sense as to keep the mortgage on foot for his benefit, as he claims, unless he levied upon the equity within the time allowed by law. An attach-·ment of real estate confers no interest in or right to the premises attached. 1 Wash. Dig. pl. 40, p. 266 ; *Braley* v. *French*, 28 Vt. 546 ; *Lacy et al.* v. *Tomlinson*, 5 Day, 77 ; 6 Day, 77. The *right, claim or lien*, or whatever it may be called, acquired or created by *simply attaching real estate*, is at least *inchoate, imperfect and incomplete.* It requires a legal judgment, execution and levy, in order to render the *right, claim* or *lien* complete. The courts have uniformly held it to be improper to make an attaching creditor a party to a bill to foreclose unless he has obtained judgment, taken execution, and levied it according to law. *Nichols* v. *Holgate*, 2 Aik. 138 ; *Downer* v. *Fox*, 20 Vt. 388 ; *Cheney* v. *Axtell*, 1 Wash. Dig. 266. Every person who has a *lien* upon real estate may redeem, and every person who has an *interest* or *lien* should be made parties to a bill to foreclose a prior mortgage. *Bullard* v. *Leach*, 27 Vt. 491 ; Sto. Eq. Pl. 176, § 193. There was not the slightest occasion for the orator moving in the matter, till he had perfected his lien by levy of execution. He expressly alleges he was not made a party to the bill of foreclosure. If he had been he would have been dismissed with costs. 2 Aik. 138 ; 20 Vt. 388.

The orator redeemed the first mortgage as an *attaching creditor.* By his neglecting to perfect his *lien* he lost all rights which might at

tach to that character. He ceased to be such. He could claim no right as such. He *voluntarily* abandoned all rights and privileges under his attachment.

ALDIS, J. This case has been heard upon demurrer to the bill.

The bill states, 1st. That the Island Pond Lumber Company executed a mortgage of five lots of land in Brighton, to the defendant, Isaac Dyer, dated March 3, 1857, to secure $478. This was the first mortgage. 2d. The plaintiff, on the 27th June, 1857, attached the lands so mortgaged, in a suit against the Island Pond Lumber Company, to secure and collect a debt that company owed him of about $2100. This was the second lien upon the lands. 3d. The Island Pond Lumber Company, on the 3d February, 1858, executed another mortgage to Dyer to secure another debt due him of about $4000. This was the third lien upon the lands.

Dyer, on the 30th September, 1858, got a decree of foreclosure upon his first mortgage—the time of redemption to expire on the 30th September, 1859—the sum due being $552.64. He also got another decree, on the 30th September, 1858, to foreclose his last mortgage (being the third lien) by the 30th September, 1859, upon non-payment of $4290.96.

The plaintiff (Chandler) was not joined in either of these bills of foreclosure.

Chandler entered his suit, in which he had attached these lands, in court at the September Term, 1857, of Essex county, and in due course of law obtained judgment at the June Term, 1860, against the Island Pond Lumber Company for $2184.68, and costs.

As Dyer's decree of foreclosure upon his first mortgage (which was prior to Chandler's attachment) would expire on the 30th September, 1859, Chandler, in order to protect his interest by attachment in the mortgaged premises, on the 26th September, 1859, redeemed the first mortgage by paying to the clerk of the court, pursuant to the statute, the amount due on the decree. Dyer received of the clerk and holds the amount so paid. This was all done before Chandler got final judgment in his suit. When he finally got judgment, he levied his execution upon other lands of his debtor, and thus his lien upon these lands by the attachment was discharged. He now brings this bill against Dyer, who claims to hold these lands

Chandler *v.* Dyer.

by virtue of his decree obtained in foreclosing his last mortgage, (which was subsequent to Chandler's attachment), claiming that Dyer shall pay what he (Chandler) had to pay to redeem the first mortgage or be foreclosed.

I. The first question which arises in the case is whether Chandler, at the time he paid the money upon the decree made to foreclose the first mortgage, had by virtue of his attachment a right to redeem the lands by paying the amount due on the decree.

It is claimed on the part of the defendant that an attaching creditor of lands, before levy of his execution, has no right to redeem. The argument to sustain this view of his rights rests, 1st, upon the fact that the attachment is a proceeding *in invitum*, not resting upon an agreement of the owner of the equity to charge the land with the debt,—that the attaching creditor gets merely a privilege to charge the land by levying his execution—that he may never get a judgment,—that if he do it may be paid by the debtor, or may be levied upon other property or lands by the creditor; and 2d, that the cases of *Nichols* v. *Holgate*, 2 Aik. 138, and *Downer* v. *Fox*, 20 Vt. 392, have established the rule in this state that an attaching creditor of lands is not a proper party defendant to a bill of foreclosure, and that if he is joined as defendant he will be dismissed with his costs. It is urged as a necessary deduction from the doctrine of these cases that if he may not be joined it must be because he has no right to redeem.

The statute of our state which authorizes the attachment of lands upon mesne process, provides that they shall be held to respond the judgment which may be recovered in the suit upon which they are attached for five calendar months after judgment. It has always been held in this state that such an attachment creates a specific lien in favor of the creditor upon the lands attached—a lien not less binding if pursued to the end by due course of law, than if it had been voluntarily created by the act of the debtor. It is a proceeding frequently resorted to—well known and much relied upon by all business men—an element materially influencing the daily transactions of business.

Practically it differs but little from a mortgage. Like a mortgage it is no proof of a subsisting debt till adjudicated upon. The mort-

gagee like the attaching creditor is not obliged to resort to the lands mortgaged—he may collect his debt out of other lands or property of his debtor;—his debt may be paid before a decree of foreclosure expires, and he may never get any legal title to the lands mortgaged. In short, a mortgage, like an attachment, is merely security for a debt. The main differences are that the one arises from contract—the other by proceeding *in invitum*;—the one takes the whole land by foreclosure, if not redeemed, the other by levy takes only enough by appraisal to pay the debt; the one has a right to possession upon breach of condition—the other only till six months after levy of execution. But whatever the special differences by which the creation or processes of execution are perfected, their main object—their substantial ends are the same—the security of debt. Regarding the intent of the statute and the universal practice under it as to attachments—and the oft-repeated language of our courts when speaking of them, we feel bound to regard them as creating specific liens upon the lands attached, and vesting in the attaching creditor a right in equity to redeem the lands from a prior incumbrance in order to make his own claim available or beneficial to himself.

If we were to hold otherwise, an attachment of lands subject to mortgage would be nugatory—always liable to be defeated by foreclosure of the prior mortgage. Such an exception would practically defeat the value of the law authorizing attachments, for every one who was in debt and likely to have his lands attached would protect them from such a liability by a mortgage.

The nature of the interest which the attaching creditor obtains—viz: security on the land for the debt—is so like that of a mortgagee that we think he should be entitled to the same right of redemption.

Such, too, are all the analogies of the law, and the rule as laid down by all elementary writers fairly includes them.

Judge STORY, 2 Eq. Jur. p. 364, § 1023, after enumerating varirious persons entitled to redeem, (among whom he names "judgment creditors and tenants by *elegit*," whose rights are merely *to secure their debts*), says: "and indeed every other person being an incumbrancer, or having legal or equitable title, or *lien* therein, may insist upon a redemption of the mortgage in order to a due enforcement of their claims and interests in the land." Nor does it make any

difference whether the lien or interest is acquired by operation of law, or otherwise. So Hilliard on mortgages, vol. 1, p. 247, says he is allowed to redeem who is entitled to the legal estate of the mortgagor, or claims a subsisting interest or lien under him.

We need not refer to our own decisions to show that this interest is held to be a lien, or to dwell upon its qualities to show that from its nature it must be a lien.

It is somewhat difficult to perceive upon what ground the *dictum* in *Nichols* v. *Holgate*, 2 Aiken, can be sustained. The mere *dictum* of the learned and cautious judge who delivered the opinion in that case, when expressed after discussion and consideration of the subject, would be entitled to great respect. But nothing in the statement of the case, or in the arguments of counsel, indicate that that point was raised. It is only from the passing remark of Judge SKINNER, at the end of his opinion, when directing as to the entries by the clerk for disposing of the case, that we can suppose the point to have been made. It was a point obviously of minor importance, and probably not at all discussed or considered ;—a suggestion to the clerk made at the moment for disposing of the case, rather than a decision to establish a precedent. At the time *Nichols* v. *Holgate* was decided an opinion undoubtedly prevailed to some extent, that the interest of an attaching creditor not being an interest in land, his right was not only one that need not be noticed in a bill to foreclose, but ought not to be. See 5 Day, 77, and the argument of counsel in 5 Conn. 544, and the remarks of Judge BRISTOL ;—but since 5 Conn. 544, it would seem that in Connecticut the attaching creditor may be joined.

The suggestion of Judge DAVIS in *Downer* v. *Fox*, 20 Vt. 392, is clearly mere *dictum*, and founded obviously upon the remark in *Nichols* v. *Holgate*. Neither of those cases ought to be regarded as decisions upon the point.

The general rule as to the joinder of parties in bills of foreclosure is that the mortgagee may join all who have a subsequent interest in or a lien or incumbrance upon the lands—all who may be interested in the accounting ;—Daniels' Ch'y Pr., vol. 1, p. 324 and 325 ;—that all subsequent incumbrances may be joined. If not joined they are not barred by the decree. See authorities there cited. It is said

they are not barred though the mortgagee have no notice of the incumbrances; but perhaps under our system of registry and constructive notice this would be otherwise.

As a foreclosure is brought to cut off the right to redeem, it would seem proper to join one who has the right to redeem. Though the right may not have become fixed, absolute, irrevocable, by levy of execution, still, if it be a subsisting lien relied upon by him who holds it, it would seem consistent with every principle of law that he who claims a superior or prior right should be entitled to call upon the owner of the subsequent and inferior lien to redeem or be foreclosed. But whether the attaching creditor before judgment and levy may be joined or not, it is clear if he is not joined that his right to redeem is not affected by the decree. The universal rule that he who has not had his day in court is not bound by the judgment would seem to settle this matter.

The remarks of Lord Keeper FINCH as cited in 1 Daniell's Ch'y Pr. 325, are opposite to this point. "Though there be a great mischief on the one hand, that a mortgagee after decree against the mortgagor shall never know when to be at rest, for if there be any other incumbrances he is still liable to an account, yet the inconvenience is far greater on the other side; for if a mortgagee, that is a stranger to the decree, should be concluded, he would be absolutely without remedy and lose his whole money, when perhaps a decree may be huddled up purposely to cheat him, and in the meantime he (being paid his interest) may be lulled asleep; whereas on the other hand there is no prejudice but being liable to the trouble of an account which if stated *bona fide* between mortgagor and mortgagee shall be no more ravelled into."

Under our system requiring the record of all deeds, mortgages and attachments of lands, the mortgagee who omits to join the parties having subsequent interests and liens, may well be supposed to omit them intentionally and at his peril.

The case of *Lyon* v. *Sanford*, 5 Conn. 544, is in point to show that the attaching creditor not joined as a party in a bill of foreclosure is not bound by the decree.

Judge STORY, in his Eq. Plead. § 193, says, "If any incumbrancers are not made parties, the decree of foreclosure does not bind

Chandler *v.* Dyer.

them," and the numerous authorities cited in his note seem fully to sustain the position.

Indeed upon principle and without a precedent the doctrine would seem to be indisputable.

II. If Chandler had the right to redeem, and his right was not affected by the decree, the question then arises, did he exercise the right in such a manner as to entitle him to hold the mortgage he redeemed as a subsisting lien against Dyer provided Dyer claimed to hold the premises by his second mortgage.

It is to be noticed here, 1st, that Chandler's attachment took effect from the time the writ of attachment was served, and was therefore a prior lien to Dyer's second mortgage. When Dyer took his mortgage he took it having notice of Chandler's prior attachment, and subject to it.

2d. Chandler, when he redeemed Dyer's first mortgage, paid the money in virtue of his right to redeem, as the second incumbrancer, and in order to protect his lien by the attachment and make it available. He paid the money just before the time' of redemption expired. He had not then obtained judgment for his debt, and could not tell whether it would be possible to secure and collect his debt otherwise than by a resort to these lands, when he should get final judgment. He could not tell when he would be able to get judgment, nor whether his debtor would then be solvent or have any visible property. Upon what principle could the exercise of his right to redeem under such circumstances be held to be a voluntary payment?

The exercise of the right to redeem a prior mortgage by a subsequent incumbrancer is the exercise of an unquestioned legal right— and, as against the mortgagor and all holding under him and subsequent to him who redeems, the effect of the redemption is not to extinguish the mortgage so redeemed, but to keep it alive. He does not pay the money as does the mortgagor to remove the incumbrance from the land, but only to suspend its operation as against himself, and prevent its rendering his own lien useless. The mortgagor cannot say to him, you have paid my debt,—removed an incumbrance from my land;—your claim by doing so becomes a mere personal

claim against me—it does not exist as an incumbrance on the land. That would be monstrous injustice—contrary to the very basis upon which successive mortgages are made. On the contrary it does remain a lien on the land till paid by the mortgagor, or by him who as the last owner of an interest in the equity of redemption stands in the place of the mortgagor. The principle that mortgages have preference in the order in which they are made, requires this. Nor can a subsequent mortgagee, who derives all his interest in the equity of redemption from the mortgagor have any greater or other rights than the mortgagor had when he made the subsequent mortgage. Nor can the fact that such subsequent or third mortgagee is the same person who holds the first mortgage—as Dyer is in this case—alter or increase his rights.

In this proceeding Chandler seeks relief against him as the holder of the third mortgage—to foreclose his claims and rights under that. He does not say to him, "you must pay me back the money I paid you to redeem your first mortgage"; but, "if you claim to hold the land by virtue of your second mortgage, you must hold it as you took it, subject to my prior lien by attachment, and subject to my right to redeem your first mortgage, and to continue to hold that also as a mortgage upon the land." By so doing he does not increase the burden on the land. Dyer has no more to pay than he knew he was subject to pay when he took his mortgage.

. If Chandler could not redeem the first mortgage without thereby losing his claim for it as a charge upon the land, his right to redeem is worthless. He cannot make his lien by attachment beneficial without losing the amount he has to pay to redeem, and it would be only when the debt secured by the attachment was as large or larger than the prior mortgage that he could redeem without loss.

To hold that Dyer, being the holder of the first and the third incumbrances, can on that account have any greater right, by virtue of the third incumbrance, than would exist in case the owner of such third incumbrance was a different person from the owner of the first, would simply be to hold to the tacking of mortgages—a doctrine not adopted in this state, and finding but little countenance at any time in any of our sister states—and substantially abandoned in this

country. The application of that doctrine to this case would not be, in the language of the English books, "to squeeze out the intermediate incumbrancer," but rather to squeeze the first mortgage out of the second incumbrancer.

Neither can it deprive Chandler of his right to hold the mortgage he redeemed as a lien on the land,—that he would not have been barred by the decree if he had not paid it. He might well wish not to run the hazard of litigation upon that then undecided question in this state. Aside from such considerations—having the right to redeem he was not bound to wait till he was called upon or sued by the prior mortgagee—he could exercise his right at any time after the debt secured by the prior mortgage had become payable and redeemable. The second mortgagee stands in the place of the mortgagor as to his right of redeeming the first mortgage. 1 Hill. on Mort. 222.

Neither can he be deprived of his right by the fact that he finally levied his execution upon other lands of his debtor, and did not pursue his lien. This he had a right to do, precisely as a second mortgagee would have a right to do.

But at the time he redeemed the first mortgage he had not abandoned his lien. On the contrary he then was relying on it—paid the first mortgage because he relied on it, and because he did not then know that he would be able to find anything else to secure his debt upon when he finally should get judgment.

It would not seem to be a very equitable claim on the part of Dyer—that because Chandler had secured his debt upon other lands of the debtor, and had thus relieved the lands mortgaged to Dyer from an attachment of about $2000., thereby enhancing Dyer's security to that amount—that he should therefore be held to have been making a mere voluntary payment when he redeemed the first mortgage under the belief that it was necessary to do so in order to save his own lien by attachment. Upon this principle every second mortgagee who should redeem a prior mortgage in order to save his own, would be precluded from resorting to other property to secure his debt; for if he should do so, he would incur the necessity of losing the money paid on the first mortgage. This would be contrary to the well settled rights of mortgagees.

A payment so made by a second incumbrancer in order to make his own claim available is never held to be a voluntary payment, but the exercise of an equitable right.

. In our own state the cases of *Downer* v. *Fox,* 20 Vt., and of *Paine* v. *Hathaway,* in the 1st Vt., illustrate the principle and apply it to cases where the equity was more doubtful than in the case at bar.

See also *Thompson* v. *Chandler,* 7 Greenleaf, 377 ; *King* v. *McVickar,* 3 Sandf. Ch'y 199 ; 8 Met. 411.

Decree reversed and case remanded to the court of chancery for a decree according to the prayer of the bill.