## CAMP *against* BATES.

Where the land of an insolvent debtor has been attached, in a suit at law, it is competent to a court of chancery, during the pendency of such suit, to enjoin him against waste.

THIS was a bill in chancery for an injunction against waste. The bill stated, that the defendant was indebted to the plaintiff, by sundry promissory notes, to a large amount ; that the plaintiff had brought a suit on those notes, which was still pending in the superior court, and had attached sundry parcels of real estate belonging to the defendant ; that there was a large quantity of young wood and timber growing on such land, which constituted the chief value thereof and the principal security for said debts ; that the defendant was utterly insolvent ; that ever since the attachment, he has been committing waste on the premises, by cutting down and carrying away the young wood and timber growing thereon ; that he threatens to cut down, carry away, and convert to his own use, all the wood and timber and fruit trees on the land, which would render it of little value or security to the plaintiff ; and that the plaintiff was apprehensive this would be done before he could obtain judgment and execution in said suit.    To this bill there was a general demurrer ; and the case was thereupon reserved for the advice of this court.

*Baldwin* and *Storrs*, in support of the demurrer, insisted,
1. That this application was *novel*, though cases similar in principle to that stated in the present bill must have occurred frequently, not only in the *New-England* states, where the attachment law prevails, but in *Great-Britain* and *New-York*, and other states, where a judgment creditor has a lien.
   2. That where a lien is created by statute, it should not be

extended beyond the statute. It is not competent to the court to enlarge the lien, or to vary it so as to give it a broader effect.

3. That the insolvency of the defendant does not vary the case. The bill states a specific lien, and asks for an injunction to protect it, on the ground that the court will not suffer *that security* to be defeated. Whether the defendant has or has not other property, is immaterial; since the plaintiff's lien is confined to this.

4. That land attached is not, as personal property is said to be, *in the custody of the law.* It remains as it was before the attachment, except that the attaching creditor has a right to resort to that fund for the satisfaction of his debt, in preference to other creditors and purchasers.

5. That the attachment transfers no title or interest whatever to the creditor; nor does it destroy the seisin of the debtor. *Sedgwick* v. *Hollenback,* 7 *Johns. Rep.* 380. The creditor acquires not even an inchoate or incipient title. He does not go into possession : he has no right to step upon the land.

6. That if this bill is sustainable, it will convert a lien on the property for a particular purpose, into a complete *sequestration* of it. And the debtor will be in a worse condition than where personal property is attached; for in that case, the debtor may be relieved, by replevin, or by receipting the property.

7. That the consequence of the plaintiff's claim will be to draw cases of this description from the jury into a court of equity.

8. That the authorities are against the plaintiff's claim. In *Angell* v. *Draper,* 1 *Vern.* 399. and *Shirley* v. *Watts,* 3 *Atk.* 200. it was held, that the creditor must have completed his title at law, by judgment and execution, before he can question the disposition of the debtor's property. In *Bennet* v. *Musgrave,* 2 *Ves.* 51. and in a case before Lord *Nottingham,* cited in *Balch* v. *Wastall,* 1 *P. Wms.* 445. the same doctrine was declared. It is also stated in the elementary writers. *Mitf.* 115. *Coop. Eq. Pl.* 149. In *Wiggins* & al. v. *Armstrong* & al. 2 *Johns. Ch. Rep.* 144. Chancellor *Kent,* after recognizing the rule, says, "the reason of it seems to be, that until the creditor has established his title, he has no right to interfere; and it would lead to an unnecessary, and perhaps a fruit-

less and oppressive interruption of the exercise of the debtor's rights.

9. That the general principles on which injunctions are granted, are opposed to the granting of one in this case. There must be a clear title to the property, in the plaintiff; and it must be alleged, and not denied; for if it be doubtful, the court will not interfere. 1 *Mad. Chan.* 104. 114. *Storm* v. *Mann,* 4 *Johns. Ch. Rep.* 21. *Field* v. *Jackson,* 2 *Dick.* 599. *Anon.* 6 *Ves.* 51. *Reid* & al. v. *Gifford,* 6 *Johns. Ch. Rep.* 19. *Weller* v. *Smeaton,* 1 *Cox's Ca.* 102. Now, in this case, the plaintiff, so far from having a *clear* title—one free from doubt—has no title whatever; and it is uncertain whether he ever will have a title. The court is called upon to enjoin in contemplation of a possible future title. In the case of an application by a mortgagee against the mortgagor to restrain waste, there is a *legal title.* As between such parties, a court of chancery recognizes the right of the mortgagee, and protects it in furtherance of justice.

*Hungerford* and *Wightman,* contra, contended, 1. That it is within the province of a court of chancery to protect the security of a debt; and that this will be done, by an injunction against waste, as in the case of a mortgagor in possession, committing, or threatening to commit, waste. The object is, to prevent fraud or injustice; and therefore, the jurisdiction of the court as to injunctions, is considered as a most useful one; and of late years, they have been allowed much more liberally than formerly. 1 *Mad. Chan.* 104. 114. *Farrant* v. *Lovel,* 3 *Atk.* 723. 1 *Pow. Mort.* 219.

2. That upon the same principle, a court of chancery will, in a proper case for its interposition, enforce a *lien,* and make it available to the party in whose favour it exists. *Angell,* v. *Draper,* 1 *Vern.* 399. *Shirley* v. *Watts,* 3 *Atk.* 200. *Wiggins* & al. v. *Armstrong* & al. 2 *Johns. Ch. Rep.* 144. *Coop. Eq. Pl.* 148. *Brinkerhoff* & al. v. *Brown* & al. 4 *Johns. Ch. Rep.* 671. 677. *Williams* v. *Brown* & al. 4 *Johns. Ch. Rep.* 682. *McDermut* & al. v. *Strong* & al. 4 *Johns. Ch. Rep.* 687.

3. That the present case is within the rule, and calls for the interposition of a court of chancery. In this state, the creditor obtains a lien on the property of his debtor, not by contract or

judgment, but by attachment on mesne process ; and this lien ought to be equally available as any other.   The property attached is a security for the debt.

WILLIAMS, Ch. J.   The question submitted to the court, in this case, is, whether a person having a debt against another, secured by note, and who has attached the real estate of that debtor to secure this debt, can obtain an injunction to prevent wanton waste to the property thus attached, when the debtor is insolvent.

On the part of the defendant, it is claimed, that the debtor has an estate of inheritance in the property ; that the creditor has no legal interest in it ; that it is uncertain whether he will ever obtain one ; that his debt may be disputed, or it may be paid, or he may not choose to levy upon the land ; and that it is not within the class of cases against which equity relieves ; that no authority can be found to support it ; and that our own authorities, so far as we have any, are against it.

Now, to determine whether this case is within the principle of the cases in which a court of equity relieves, it must be ascertained what are the rights of the plaintiff, and what the principles of a court of chancery.   It is admitted, that by the attachment, the plaintiff acquires no legal title to the estate in question ; and that he may, perhaps, never obtain one.   It is not admitted, that a legal title is necessary.  A mortgagor, who has parted with his legal title, may obtain this remedy against the mortgagee ;  or a second mortgagee, who has no legal title, may obtain it, against his mortgagor.

But it is further said, that this plaintiff has neither an equitable, nor a legal title.   That he has no interest in the estate ; none which a court of equity would consider a vested interest, must also be admitted.   What, then, are his rights ?   They are probably peculiar to the legislation of *New-England ;* they are not defined by the statute which creates them.   It provides, that attachments may be granted against the goods or chattels, or for want thereof, against the lands or person of a debtor ;  and after prescribing the mode of service, it provides, that unless so completed, the estate shall not be holden against any other creditor or *bona fide* purchaser.   The necessary inference is, that this attachment, when so completed, shall hold the estate against such creditors or purchasers, as well as against

*Middlesex,*
July, 1835.

Camp
*v.*
Bates.

the owner, to respond the judgment. We are not, then, to speculate as to the result, whether the creditor will recover at all, or recover the full sum which he demands. The estate thus attached, is to be holden to meet that recovery, be it more or less.

The statute intended to secure the debtor from mistaken attachments, by the bond it required. The common law will protect him from malicious attachment, as well of the estate as of the body. At all events, power is given (although no interest) to the creditor to secure his supposed demand. There is, indeed, no express restraint against alienation laid upon the owner ; but it is impliedly made void. Now, if this is a fair construction, that the debtor cannot, under these circumstances, alienate the land, to the detriment of the creditor, can he any more alienate the houses situated upon it ? Is not the one as fairly forbidden as the other ? And if he cannot alienate the buildings, he can have no greater right to alienate the timber growing thereon. The object of the privilege thus given to the creditor, was, that the property should remain sequestered for the payment of the debt. It need not, indeed, be taken into the hands of the officer, as personal property, because another mode, better adapted to give notice, is prescribed. But still it is as much in the custody of the law as the personal property attached. It may be truly said, the hand of the law is upon it. In the case of *Lacey* & al. v. *Tomlinson,* 5 *Day* 77. 80. it is expressly laid down, that " the attachment has no effect but to take the land into the custody of the law, to secure it against the alienation of the debtor, and the attachment of other creditors, and to hold it to be levied upon, by an execution, when judgment shall have been obtained."

The lands, then, upon which the waste complained of is committed, is the land of the defendant, taken into the custody of the law to secure the plaintiff's debt. It is, in short, a pledge for the debt, taken by the creditor, not by the debtor's consent, but in pursuance of the provisions of law. It is a lien thus created.

The question then arises, does the law give this privilege, and then leave the debtor to take it away or destroy it ? Does the law give a privilege, and allow the party against whom it is given, to render it useless ? Is a court of chancery so utter-

ly impotent, or is it so fettered by its own rules, that this may be done, and the court have no power to prevent it ?

This brings us to the consideration of the power of a court of equity. And although the general object of courts of justice is to give redress for injuries committed, it is the peculiar province of a court of equity to prevent the commission of injustice. And when a litigation is pending, and there is danger that the property will be lost or injured, and the court wherein the suit is pending cannot provide for its safety, or the common law affords no protection, a court of equity will interpose for its preservation. 2 *Sw. Dig.* 133. Here a litigation is pending ; the property appropriated under the law to await its termination, is likely to be destroyed, by one of the parties ; and the common law affords no protection. It is, then, the very case for the interposition of a court of equity.

Again, it is a principle sanctioned by able *English* commentators, that courts of chancery grant injunctions against waste, to restrain acts against conscience or the existing rights of others. 1 *Mad. Chan.* 123. 126. Can there be a doubt, that the act here complained of, is an act against conscience and the existing rights of others ? Did not the plaintiff, by his levy, acquire the sanction of law, that the property should stand pledged to await his judgment ? Had he not then a *right—* a right acquired by this lien—a right which a court of justice is bound to respect and defend ? It is not, indeed, a legal interest, which would pass by a release deed ; but it is a right no less sacred, and no less regarded in a court of law. His right, in this case, is acquired under the same statute as his right to the personal property attached. That is protected, by the intervention of the officer, in whose custody it is placed. He is accountable to the creditor, if it is injured or destroyed. Here the same hand is not interposed, but the same general law is the guardian of both ; and its protecting care cannot depend upon the official strength with which the property is surrounded. In both cases, the laws of the land have given a right to an attaching creditor to appropriate the property attached to the payment of his debt, if he should obtain judgment.

It seems, then, as if it must follow of course, that the moment the property, either real or personal, is taken into custody of the law, the law must defend it against those who attempt to

divert it from the object to which it has been thus devoted. The use of the property, during the pendency of the proceedings, it is true, remains with the debtor. The fact that the creditor has no vested interest in the property, would prevent his right to the use ; and the expenses attending the cultivation of land and the accounts to be kept, would make the occupation of little value to any one but the owner. The possessor, therefore, has always been suffered to remain unmolested, so long as he contented himself with the ordinary returns. This seems necessary, that the property may not be abandoned ; but it can confer no right to do such acts as are charged in this bill—acts of wanton, malicious waste.

The case, in principle, seems much like that of a mortgage. In both cases, the land is appropriated as security for the debt. In both cases, the creditor has the right to take the land, or resort to other property, if it can be found. In both cases, the debtor may remove the lien, by payment of the debt. In both cases, the debtor may deny or disprove the existence of the debt. Why, then, should not a court of chancery have the same power to prevent waste upon this property, in the one case as well as the other ? If it is done in the one case, that the security given by the party should not be destroyed, it should be done in the other, that the security given by the law should not be destroyed. Surely, the law must be as anxious to guard its own enactments, as the provisions of the parties themselves.

It is said, that chancery never will do this against the owner, unless he is acting *as trustee.* The mortgagor can hardly be said to be acting as trustee ; for he is, in equity, considered as owner. Nor is the rule confined to such cases ; for even a tenant in tail, without impeachment of waste, has been restrained from wanton, malicious or extravagant waste. *Vane* v. Lord *Barnard,* 2 *Vern.* 738. Sir *Herbert Packington's* case, 3 *Atk.* 217. *Strathmore* v. *Bowes,* 2 *Bro. Ch. Rep.* 89. *Chamberlyne* v. *Dummer,* 3 *Bro. Ch. Rep.* 549.

It is said, this will not be done where the right is *doubtful.* On this demurrer, there exists no doubt as to the debt ; it is admitted. But even were it denied, there is no doubt in the case : the plaintiff has a legal lien upon the property to await his judgment. This is not a matter of doubt. It may be doubtful whether he will recover the whole sum, or even any part.

Middlesex,
July, 1835.
———
Camp
v.
Bates.

The same doubt always may exist upon claims secured by mortgage; but this forms no objection to an injunction. How far this objection would be valid, where the debt was, in its nature, uncertain, or where the claim was founded upon a tort, it is not necessary now to determine, as this claim is of a different character.

It is said, the insolvency of the defendant makes no difference. It certainly adds great strength to the claim; because if there was an ample estate, or goods and chattels in abundance, to be found, there would be much less need of this summary remedy.

It was also claimed, that this was diverting questions from courts of law, to courts of chancery. It is not apparent how the argument applies to this case, more than any other case, where application is made for an injunction. The court, upon this summary proceeding, do not find facts, in such a manner, as to preclude the parties from contesting them before a jury; but must be so far satisfied with respect to them, as to deem it proper that the property attached should remain in the same situation that it was found in, to await the event of the judgment.

It was further objected, on the part of the defendant, that it was completely sequestrating the property in the hands of the debtor. It leaves him all the ordinary use of the property:—it leaves him that power which a prudent husbandman ordinarily exercises over his property. It denies him a power of alienation, and a power of wanton destruction.

It is said, such power is not supported by authorities, but is opposed to them; and authorities are shown, in which it has been holden, that the creditor must perfect his title, before he can call on a court of equity for relief. Now, process of this kind is unknown in *England* or *New-York*. There, the creditor can obtain no lien upon the land, but by judgment; and having obtained judgment, there is no reason why he should not perfect his title, by levying his execution. The court, therefore, say, he must complete his title before he asks relief. But here the injury is done, while the law prevents his completing his title, after it gave him his lien; of course, there is no analogy between the cases; nor is there any decision shown, which can be considered as controuling this case. In our own courts, no case is cited, except two cases before single judges, at their chambers. Those opinions, however respectable, would

not be authority in this court; and it is probable that the one was based upon the other. As the question is now before this court, unembarrassed by authority, it must be decided upon principle. The granting or continuing of the process must always rest in sound discretion, to be governed by the nature of the case. *Roberts* v. *Anderson,* 2 *Johns. Ch. Rep.* 205.

Unless there is some technical rule that prevents, there can be no doubt that this is a case, where, in the exercise of such a discretion, an injunction ought to be granted. A right or privilege conferred by statute, has been wantonly infringed; and an attempt is about to be made to deprive a party acting under that statute, of much of the benefit intended to be conferred by it.

The objections made at the bar cannot prevail; but another, perhaps, may arise deserving consideration. In the case of *The Enfield Toll Bridge Company* v. *The Connecticut River Company,* 7 *Conn. Rep.* 50. Ch. J. *Hosmer,* after citing the case of *Roberts* v. *Anderson,* says: "If the right is not doubtful, an injunction will always be granted, to secure the enjoyment of a statute privilege, *of which the party is in the actual possession;*" and that he "does not find, that chancery has gone beyond this limit." It may perhaps be said, that here the party was not *in actual possession;* and therefore, chancery will not interfere. Now, where the privilege granted is one, which, from its nature, is capable of actual possession, the limitation may be correct; and in that case, the party to whom the franchise was granted, had neglected to take the actual possession. The principle, as applied to that case, was, therefore, undoubtedly correct. But the case cited did not demand, nor did the judge consider at all how it might have been, if a statute privilege was granted, and the party had done every thing to make it available that the law required or permitted. Here, from the nature of the case, no actual possession of the property could be obtained, by the creditor. But the writ of attachment gave to the creditor the statute privilege, and all the possession that the nature of the case admitted. The property is left in the possession of the debtor, just as in the case of a mortgage; but it is in view of the law, in the custody of the law itself; and being so, the law must protect those who are reposing upon its care.

*Middlesex,*
*July, 1835.*

Chatham
*v.*
Brainerd.

The result is, that the superior court must be advised, that the plaintiff's bill is sufficient.

The other Judges were of the same opinion.

Demurrer to be overruled.