## JOEL HAYDEN, JR. *vs.* BRADSHAW H. STONE.

Before the passage of St. 1846, *c.* 203, a highway could not be created by dedication without an intent on the part of the owner of the soil to make the dedication, and an acceptance of, or an assent to, the dedication on the part of the town.

Upon the trial of an issue whether land had been dedicated as a highway, a witness testified that A., who it was claimed had made the dedication, told him at a time subsequent to the alleged dedication, that he (A.) owned the land ; *Held,* that evidence was properly admissible in rebuttal, that the witness after A.'s death being one of the appraisers of his estate, did not inform the other appraisers of A.'s claim of ownership.

A defendant who has had a verdict rendered in his favor is not aggrieved by, and cannot except to, an adverse ruling of the court.

TORT to recover damages for breaking and entering the plaintiff's close, situated at the corner of Bridge and Hawley streets, in Northampton.

At the trial in the Superior Court, before *Brigham*, C. J., it appeared that the plaintiff claimed title under a deed from the executors of John Clarke ; that in 1824 Clarke purchased the land at the corner, and erected a house on it, and built a fence around the greater part of it, leaving unfenced a triangular piece at the corner of the streets ; that the trespass complained of was the tearing down a fence erected by the plaintiff in 1870, at the westerly corner of the triangle.

---

* See *Insurance Co.* v. *Dunn*, 19 Wall. 214; U. S. Rev. Sts. § 639.

The defendant admitted the act, but justified as a surveyor of highways acting under the authority of the town. He admitted that the triangle was included in Clarke's purchase, and that the plaintiff had a title to it, if Clarke had not lost the right to convey it by having dedicated it to public use. He also admitted that it had never been laid out by the town as a highway; that no municipal or official action had ever been had in regard to it, except that in 1826 the town instructed the selectmen to name the streets; that they made a report, and among other streets named the street from Clarke's to one Strong's, Hawley Street; and Samuel Parsons, one of the then selectmen, testified that at this time he visited Hawley and Bridge streets, and the fence was then where it had ever since remained. Upon this report the town voted " that the streets be established and known by the names designated in said report." There was evidence that at that time the highway surveyors of Bridge and Hawley streets carted in earth at the corner of Hawley and Bridge streets, and filled up the lowland so as to affect the level of that corner of the triangle.

The defendant offered evidence that Clarke's fence had always remained as first erected; that Clarke had made repeated declarations indicating a purpose to dedicate the land to public uses, and also had done various acts indicating the same purpose. His evidence also tended to show a long continued use of the land by the public for foot travel, for hitching horses on public occasions and on Sundays, and various acts of a public nature tending to show that the dedication was accepted by the public; that at the time Clarke threw open the triangle in question to the public, he inclosed land at the easterly end of his line, which before had been public; that Clarke's fence had been in the same position since 1826; and the defendant relied on evidence that the neighborhood about the disputed premises had so increased in population, buildings and business, that the land had become essential to the convenience and use of the public.

The plaintiff offered evidence tending to show that Clarke, when he built the fence, put down a boundary stone at the corner of Bridge and Hawley streets; that he on one or more occasions

erected posts on the line of Bridge Street and thirty or forty feet on Hawley Street on the triangle, but in such a way as not to exclude the public foot travel; and that he made various declarations and prohibitions, and did many acts, tending to show he had not dedicated the land to public use, but retained and claimed it as his own.

One Lathrop, who was called by the plaintiff, testified that Clarke many years ago told him he owned further down than his fence extended on Bridge Street, but did not show him how far down. The defendant called one Edwards, who testified, against the plaintiff's objection, that Lathrop, one Hubbard and himself were the appraisers of the estate of Clarke, who died in 1869; that they went over the estate together, but that Lathrop did not say anything about Clarke's owning beyond the fence.

The court ruled that the defendant in proving a dedication would be limited to a dedication previous to 1846; and gave, upon the question of what constituted a dedication, full general instructions to the effect that there must be an intent to dedicate or an assent to the dedication by one party, and an acceptance on the part of the public.

On the question of dedication as affected by the public convenience the court instructed the jury, that while in general an intent to dedicate was essential, yet a man might do acts of such a character and so continue in the doing of them, and the public might so avail itself of such acts, that their convenience would be affected to such an extent as to prevent a withdrawal of the land from the public use, and in this connection gave this specific instruction: " If the conduct and declarations of Clarke induced a reasonably well founded public belief of the dedication of this land to public use, and thereupon public use of such land began and continued with Clarke's knowledge until his disclaimer or withdrawal of such dedication would have seriously affected the public convenience, the dedication on the part of Clarke would have been consummated, notwithstanding in fact no intent to make such dedication was in the mind of Clarke in such conduct and declarations." The jury returned a verdict for the defendant, and the plaintiff alleged exceptions. The defendant

also excepted to the refusal of the presiding justice to rule in conformity to a request for instructions made by him.

*M. P. Knowlton & H. H. Bond,* (*D. W. Bond* with them,) for the plaintiff.

*C. Delano,* (*J. C. Hammond* with him,) for the defendant.

ENDICOTT, J. A highway by dedication could be created in this Commonwealth prior to the St. 1846, *c.* 203, by the owner of the land dedicating the particular parcel to the use of the public for the purposes of a highway, and the acceptance of the gift or the acquiescing in such use by the city or town bound to keep it in repair. *Hobbs* v. *Lowell,* 19 Pick. 405. *Bowers* v. *Suffolk Manufacturing Co.* 4 Cush. 332, 340. The intent so to dedicate must be made manifest by the unequivocal declarations or acts of the owner. If the intent so to do is not clearly established, there is no highway. In *Hobbs* v. *Lowell,* Chief Justice Shaw said : " The great question has been whether particular acts have been such as clearly to indicate the intent of the owner of the soil to appropriate it to public use." In *Hemphill* v. *Boston,* 8 Cush. 195, dedication is described as a gift of the land by the owner for a way ; and in *Rowland* v. *Bangs,* 102 Mass. 299, 303, it was said " there was nothing to show a purpose on the part of the owner of the soil to surrender its control to the public." Similar language is used in *Wright* v. *Tukey,* 3 Cush. 290, and in *Durgin* v. *Lowell,* 3 Allen, 398. In *Barraclough* v. *Johnson,* 8 A. & E. 99, the court said that a dedication must be made with an intention to dedicate, and that the question is always on the intention of the owner. The authorities are cited and considered at great length in *Irwin* v. *Dixion,* 9 How. 10, and it was held that a dedication to a public use is made by an intent of the owner of the land sufficiently manifested by some act or declaration by him, and when such intent cannot be found, no dedication is made.

When the intent to dedicate is declared or made manifest, and such dedication is accepted, the land becomes subject to the easement of a public way. No specific length of time is necessary ; the acts of the parties to the dedication when once established complete it. The essential element is, therefore, the intent

on the part of the owner, followed by acceptance. When the way is accepted, the owner cannot withdraw his dedication. *Crocket* v. *Boston*, 5 Cush. 182. Mere user cannot establish it, nor is user by the public essential or necessary to its establishment. A way may be dedicated by the owner, accepted by the town or city authorities, and it becomes at once a way, although never used by the public or essential to the public accommodation. Evidence of user is competent, and often important, as bearing on the question of dedication, when that is in dispute ; for if a man stands by, seeing the public use a way, permits it, and says nothing, it is very strong evidence to show an intention to dedicate ; on the other hand it bears also on the question of acceptance, though in Massachusetts mere user by the public is not sufficient in the absence of any evidence of acceptance or acquiescence in the use on the part of the town or city bound to keep it in repair ; it is competent, however, as having some tendency to show acceptance on the part of the town.

As mere user cannot create a way by dedication, it is immaterial that it has been enjoyed by the public under a well founded belief that there was an intent to dedicate ; and the fact that the public will be incommoded by being deprived of the use cannot change the rights of the parties in the absence of the intent to dedicate. It was said by Lord Denman, in *Barraclough* v. *Johnson, supra*, that the mere acting so as to lead persons into the supposition that the way was dedicated does not amount to a dedication. Such acts may be proof of intent, but they may be explained, and may be entirely consistent with another and different intent. See *Bowers* v. *Suffolk Manuf. Co., supra*.

It follows, therefore, that the learned judge erred in his specific instruction to the jury on this branch of the case. The substance of the instruction was, that if the conduct and declarations of Clarke led to the well founded belief on the part of the public that the land was dedicated to be used as a highway, and such use began and continued with Clarke's knowledge, and the withdrawal of such dedication would seriously affect the public convenience, the dedication on the part of Clarke would have been consummated, although Clarke had no intent to dedicate. On

this instruction, although the jury should expressly find that Clarke, acting in good faith, had no intent by such acts and declarations as he made to dedicate this land to a public use, still they might find a dedication if the public used it supposing it had been dedicated, and with his knowledge, and would be seriously incommoded by being deprived of the use. Such use under such circumstances would be strong evidence to prove intent and consequently dedication by Clarke, but could not supply the place of intent or justify a verdict when it appeared distinctly that he had no such intent.

The authorities that the intent of the owner is a necessary and vital element to establish a dedication, are conclusive upon this point.

There is another objection to this ruling which is decisive, and as there must be a new trial, it is proper to consider it. It authorizes the jury to find the acceptance of the dedication, if there was a dedication, from the use on the part of the public, and not from the acceptance or acquiescence in the dedication by the town or its officers acting within the scope of their authority. It was intimated in *Hobbs* v. *Lowell,* that without such acceptance or acquiescence by the town a way could not be considered a public way, although dedicated as such ; this view was confirmed in *Bowers* v. *Suffolk Manuf. Co. ;* and in *Morse* v. *Stocker,* 1 Allen, 150, the authorities and statutes were reviewed, and it was there stated that prior to the St. 1846, *c.* 203, no way or street could be made a public way merely by throwing it open to the public, or in other words by dedication on the part of the owner or permitting the public to use it, without the assent by the public authorities, and its acceptance as a street by them ; and that since the St. 1846 this assent and acceptance could only be given by laying out the street according to law. See *Rowland* v. *Bangs,* and *Durgin* v. *Lowell, supra.*

The instruction to the jury, therefore, should have been in accordance with the rule there laid down applying to dedications prior to 1846 ; that there could be no acceptance of the dedication merely by the use made by the public, but the jury must **find** the acceptance or acquiescence of the town to the dedication

and its use as a way. The use of the public is competent evidence, as bearing upon the question of the acceptance by the town.

The testimony of Edwards was competent. Whether the fact that Lathrop did not say at the time of the appraisal that Clarke owned below the fence, was entitled to any weight in considering his testimony, was for the jury to determine. *Fisher* v. *Plimpton*, 97 Mass. 441. *Brigham* v. *Clark*, 100 Mass. 430. *Hook* v. *George*, 108 Mass. 324.

The defendant, having obtained a verdict, is not now aggrieved by the ruling against him at the trial, and sustaining his exceptions could be followed by no judgment in his favor. If the evidence should be the same at the new trial, he may then raise the question presented by his bill of exceptions. It is not open at this time. *Plaintiff's exceptions sustained.*