JOHN BRIGHAM *vs.* LEVI C. CLARK & another.

A written agreement of A. with B. that A. shall furnish a stock of goods and shop fix·
tures, valued at a certain sum; that B. shall pay rent for the shop, manage the busi-
ness and pay A. interest on one half of the value of the stock and fixtures; and that
they shall divide the profits equally; renders them partners, as to third persons, notwith-
standing an oral understanding between themselves, before or at the time of signing the
agreement, that B. shall receive the share of profits instead of a salary.

Whenever a witness testifies to a material fact at a trial, any of his previous acts or declar-
ations, which appear to be inconsistent with such testimony, are competent by way of
contradiction.

In an action to charge A. upon an indorsement of "B. & Co." on a promissory note, he de-
nied that he was a member of such a firm; but B. testified, for the plaintiff, at the trial,
that such was the style of a partnership between himself and A. at the time of the indorse-
ment. *Held*, that, in contradiction, it was competent for A. to prove that, in proceedings
in insolvency against B. individually, B. included in his list of assets no property in any
firm under that style, and inserted in his list of creditors the holders of similar notes;
and that claims similar to that in controversy were proved against B.'s estate.

CONTRACT to charge Levi C. Clark and Thomas J. Dunbar,
as indorsers, under the style of L. C. Clark & Co., of four prom-
issory notes, dated January 1, 1862, made by Philander A.
Jones, and owned by the plaintiff. Writ dated July 22, 1867.
Clark was defaulted. Dunbar's answer denied that he was a
partner of Clark, or a member of any firm under the style of
L. C. Clark & Co.

At the trial in the superior court, before *Reed*, J., there was
evidence tending to show that, on September 3, 1857, Dunbar,
with John Muzzy, (since deceased,) as copartners under the firm
of T. J. Dunbar & Co., signed, with Clark, the following con-
tract:

" T J. Dunbar & Co. agree to furnish stock and fixtures at
store No 554 Washington Street, including bowling alleys con-
nected therewith, valued at $4000. Clark agrees to furnish his
services to manage the business at the store, and to give his
time and undivided attention thereto. The profits arising from
the business to be shared equally by Clark and T. J. Dunbar &
Co., Clark agreeing to pay legal interest on one half the above
mentioned amount of stock, viz: $2000. It is further agreed
that Clark shall draw fifteen dollars per week, to be charged to

his private account, to be deducted from his share of the profits as above mentioned. And Clark agrees further to pay rent for the above store and bowling alleys at the rate of $1000 per year, payable monthly."

Dunbar testified, without objection, to "various conversations and understandings before the execution of said paper, and at the time of the making thereof, one of which was, that Clark was to receive a share of profits instead of a salary." The evidence tended further to show "that the contract was never varied after its execution, except as to the style of the firm." Clark testified, as a witness for the plaintiff, that it was agreed that the style should be L. C. Clark & Co.; but Dunbar denied any such agreement. There was also evidence tending to show that "L. C. Clark & Co." was painted on the door of the shop, and billheads and cards were used there, and issued from there, inscribed in like manner; and that Dunbar visited the shop daily. But Dunbar denied ever knowing of any such inscriptions.

"Dunbar offered in evidence the insolvency papers of Clark, to show that he went into insolvency individually, and not as a member of any firm; that claims similar to those in controversy were proved against his estate; that he inserted in his list of assets no property in said firm; and that he inserted in his list of creditors persons who held notes similar to those in question; in which papers, so offered, there was no reference to any partnership; but the judge excluded the evidence."

The judge ruled that the contract signed on September 3, 1857, constituted the parties thereto partners, and controlled their prior conversations and understandings. A verdict was returned for the plaintiff; and Dunbar alleged exceptions.

*C. S. Lincoln,* for Dunbar.

*E. C. Baker,* for the plaintiff.

FOSTER, J. We entertain no doubt of the correctness of the ruling that, by the terms of the written agreement, the defendant Dunbar was made a copartner with L. C. Clark. *Pratt* v. *Langdon,* 12 Allen, 544, and 97 Mass. 97. But the partnership agreement did not state the style of the firm; and it was

material to show that the notes indorsed " L. C. Clark & Co.' had been given by and in the name of the partnership which the writing disclosed. L. C. Clark, being a witness, testified, among other things, that such was the style of the firm. To contradict him, the defendant offered the papers in the insolvency proceedings by Clark. They were admissible to show that, by the style of L. C. Clark & Co., he had signed notes which were his own personal debts only, and not those of the partnership formed under the written agreement between himself and Dunbar. It was material, and important, to show not only the existence of the copartnership between Clark and Dunbar, but that the indorsements in suit had been made by that firm. The papers offered tended to contradict Clark's testimony on that subject, and to show, contrary to it, that the style of L. C. Clark & Co. was used by him in his private and individual business. Wherever a witness has testified to any material facts, any acts or declarations of his which appear to be inconsistent with his version at the trial are competent by way of contradiction.

*Exceptions sustained.*