STATE OF MAINE *vs.* WILLIAM G. KINGSBURY.

*Evidence to contradict—corroborative—collateral. Burning a meeting-house. Opinion—disqualification of juror.*

Statements made by a person out of court, which are inconsistent with his material testimony in the trial of a cause, are competent by way of contradiction.

Thus where, in the trial of a person for procuring another to maliciously burn a certain meeting-house, the wife of the defendant had testified that no inducements, as testified to by the accomplice, were held forth, on a certain occasion, nor means furnished him by her husband for firing the meeting-house,—it is competent for the purpose of contradicting her, to prove that when her husband was first arrested, and she was informed that the accomplice had turned State's evidence, and charged her husband with inciting him to fire the building, she replied, "Well, he never would have done it if it had not been for others,—others were more to blame than he was."

The admission of irrelevant testimony will not be deemed sufficient ground for a new trial, when the jury were expressly instructed to disregard it.

Where, in the trial of a person charged with maliciously burning a meeting-house, it was in evidence that the accomplice fired the building by means of a can of kerosene oil furnished for the purpose by the defendant, testimony that the shirt of the accomplice, when he fired the building, had kerosene stains upon it, is admissible.

Answers to collateral questions in cross-examination are conclusive.

Such as asking one, who fired a building at the alleged instigation of the defendant, if he had a mania or strong desire to see burning buildings, or whether or not under the influence of such a feeling he had fired other buildings.

R. S. of 1857, c. 119, § 3, recognize meeting-houses as erected for public uses ; and proof that such a house was occupied for public worship is sufficient.

To be a sufficient ground for disqualifying a juror from sitting in the trial of a criminal prosecution, the opinion formed by him must be fixed and unconditional.

ON EXCEPTIONS, and motion for new trial because of disqualification of two of the jurors.

INDICTMENT under R. S., c. 119, § 3.

The facts sufficiently appear in the opinion.

*L. Clay & E. F. Pillsbury*, for the defendant,

In support of the motion, cited *McAllister* v. *Sibley*, 25 Maine, 474; *Studley* v. *Hall*, 22 Maine, 198; *State* v. *Webster*, 13 N. H. 491; *Com.* v. *Roby*, 12 Pick. 519; *People* v. *Mather*, 4 Wend. 229; *Troxdale* v. *State*, 9 Humph. 411; *Wiggin* v. *Plummer*, 11 Foster, 251; *Willis* v. *People*, 32 N. Y. 715; *People* v. *Plummer*, 9 Cal. 298; *Nesmith* v. *Clinton F. Ins. Co.*, 8 Abbott, 141; *Foster* v. *Brooks*, 6 Geo. 287; *Riley* v. *State*, 9 Humph. 646; *Madder* v. *State*, 1 Kansas, 340.

In support of the exceptions, counsel cited upon the point that " statements out of court must be contrary to what was testified at the trial." 1 Greenl. on Ev., § 462; *Hathaway* v. *Crocker*, 7 Met. 265; *Hubbell* v. *Bissell*, 2 Allen, 196.

Upon the kerosene stains,—that they did not " tend to fix the guilt on the particular person charged, and the rights of the accused should not be prejudiced by confirmation of immaterial points," counsel cited *People* v. *Haynes*, Albany L. Journal, March, 1870, 215; *Com.* v. *Bosworth*, 22 Pick. 400.

That the building should be proved to have been erected for pub-

lic uses.   R. S., c. 119, § 3 ;  Russ. on Crimes, 786 ;  1 Greenl.  on
Ev., § 816.

*T. B. Reed,* attorney-general.

Upon the admissibility of Mrs. Kingsbury's declarations for the
purpose of impeachment, cited *Com.* v. *Hunt,* 4 Gray, 423 ; *State*
v. *Blake,* 25 Maine, 350, 353.   On the cross-examination of
Kitchen, *Harrington* v. *Lincoln,* 2 Gray, 133 ; *Com.* v. *Goddard,* 2
Allen, 148 ; *Ware* v. *Ware,* 8 Greenl. 52 ; *Com.* v. *Buzzell,* 16
Pick. 157, 158.

On disqualification of jurors, *Smith* v. *Eames,* 3 Scam. 76 ; *Bax-
ter* v. *People,* 3 Gil. 368 ; *People* v. *Honeyman,* 3 Den. 121 ; *People*
v. *Fuller,* 2 Parker's Cr. Cas. 16 ; *People* v. *Stout,* 4 Parker's Cr.
Cas. 71, 132 ; *Sanchez* v. *People,* 4 Parker's Cr. Cas. 535 ; *State*
v. *Spencer,* 1 N. J. 196 ; *Mann* v. *Glover,* 2 Green, 195 ; *Moses* v.
*State,* 11 Humph. 232 ; Epp's Case, 5 Grattan, 676 ; *Smith* v.
*Com.,* 7 Grattan, 593 ; *Ramage* v. *Ryan,* 9 Bing. 333 ; *Taylor* v.
*Greeley,* 3 Greenl. 204.

APPLETON, C. J.   The defendant was indicted for inciting, pro-
curing, hiring, etc., one James Kitchen to set fire to a certain
meeting-house,—the property of the Second Baptist Church in
China, and erected for public use, whereby said meeting-house was
burnt and consumed.

The testimony of Kitchen is not reported, but as there was a
conviction, he must, probably, have testified to the facts set forth in
the indictment.

To contradict his statements, the defendant offered the testimony
of his wife, from which it appeared that Kitchen, on the evening of
the fire, returned from Augusta with the defendant, who had on that
day been tried and fined for a violation of the Maine liquor law ;
that he took supper at defendant's ; that she was present with them
while Kitchen remained, not having been absent from their sight
more than a minute at a time ; that Kitchen left,—her husband
remaining with her,—and that he did not take the lamp-filler from
the kitchen that evening.

Her evidence tends to prove that nothing could have been said or done by her husband in her presence to induce Kitchen to set fire to the church, and that he did not furnish the lamp-filler with kerosene for that purpose.

As her testimony was to contradict Kitchen, it is fairly inferable that he testified to the reverse, in whole or part,—that the wife was not thus continually present while he was in the defendant's house, and that inducements were there held forth, and means furnished by the defendant for accomplishing the purpose the latter had in view.

To contradict the testimony of the wife, one Sawyer was called, who swore that he called on Mrs. Kingsbury in the course of half an hour after Kingsbury was taken away, after the confession of James Kitchen; that he asked Mrs. Kingsbury if she knew why her husband was taken away; that she said she did not; that he told her he understood that Kitchen had made a confession, and in his confession had stated that her husband hired him to burn the house; that she replied, "Well, he would never have done it, if it had not been for others,—others are more to blame than he was."

The witness was sworn to testify the truth, the whole truth, and nothing but the truth. She might misrepresent or conceal the facts, or she might utter falsehoods. She would be impeached by proof of misrepresentations, concealment, or the statement of falsehoods. She is impeached by the utterance of statements inconsistent with or contradictory to facts stated by her.

Whenever a witness has testified to any material facts, any acts or declarations of his which appear to be inconsistent with such testimony, are competent by way of contradiction. *Brigham* v. *Clark*, 100 Mass. 430. It is not necessary that the contradictions should be in terms; statements by the witness, inconsistent with his testimony upon material matters, may be proved against him. *Hall* v. *Young*, 37 N. H. 134.

"He would never have done it, if it had not been for others,—others are more to blame than he was." He would not have done it, *i. e.* he did it, but there is an excuse for his doing it. The

blame rests more on others than on him. The statement may imply knowledge not merely of the husband's having done that wherewith he was charged, but that he did it at the instigation of others. It may tend to show that the witness either concealed or falsified the facts within her knowledge, and, in either event, this testimony was admissible for the purpose of contradiction.

If it be said that the witness referred to Kitchen, that was not to be determined by the court. The meaning of the language used was for the jury, not the court. It was for the jury to determine whether or not it impeached, in any degree, the testimony of Mrs. Kingsbury. It was received only for that purpose. If the language was capable of different constructions, the jury were to give it the right one. The evidence was not to be excluded, if in any aspect it tended to contradict, and by contradicting to impeach the testimony of the defendant's wife.

It was either contradictory of the testimony of the witness, or it was not. If contradictory, as we think it was, then the evidence was properly received. If not contradictory, it was immaterial, and a new trial is not necessarily to be granted, because inadmissible testimony has been received, particularly when, as in this case, the jury were instructed that it was not to be weighed as proof of the prisoner's guilt at all, nor was it the proper subject of argument in that direction. It frequently happens, during the progress of a trial, that witnesses, ignorant of the rules of evidence, utter what, upon legal principles, is inadmissible. The government may propose to contradict a witness in defense, and may call testimony for that purpose. The evidence fails to contradict the witness. The jury are instructed not to regard such testimony. When proper instructions are given, such admission is not deemed a ground for a new trial. It is to be presumed the jury will follow the directions of the court. If it were not so, a witness might stop a cause in mid trial, or it must proceed at the hazard of a new trial, and the court would be powerless to avert the evil by any instructions, however pertinent and stringent. In the present case, if the jury gave heed to the court, and we must presume they did, no harm was

done, even if the evidence was not contradictory; for they were told it was not to be weighed as proof of the prisoner's guilt at all.

It is usual in cases of felony to require other evidence in corroboration of an accomplice; but, nevertheless, it is competent for a jury to convict on the testimony of an accomplice alone. The testimony of Charles Kitchen, that there were stains of kerosene oil on the calico shirt his father had on when he set the fire, was legally admissible as a fact in the case. It does not appear that it was offered as a fact in corroboration of the testimony of the father. And if it was, it is to be presumed that proper instructions were given as to whether it was to be deemed a corroborative fact or not, inasmuch as there are no exceptions to those given, nor to any requested and withheld on this subject.

James Kitchen, a witness called by the government, was asked a series of irrelevant questions on cross-examination, to all of which he made answers. The prisoner's counsel proposed to disprove the truth of those answers, but the presiding judge rejected the testimony as inadmissible, and rightly. The answers given were all collateral to the issue. Having received answers to his collateral inquiries, the prisoner must abide by the result, otherwise there might be collateral issues raised, limited in number only by the fertile ingenuity of counsel.

Meeting-houses, court-houses, etc., are buildings erected for public uses. The statute, c. 119, § 3, recognizes them as so erected. Other buildings, erected for public use, include all such as are not included in the preceding enumeration. The ruling of the presiding judge was not erroneous in this matter.

The defendant has further moved for a new trial, because Wm. M. Robinson had formed and expressed the opinion that the defendant was guilty of the crime charged before the trial, and was, therefore, disqualified to act as a juror on his trial.

Alfred M. Nelson testifies that some six months before the trial, he told Robinson that if Kingsbury hired Kitchen to burn that meeting-house, he thought he ought to go to State prison, and, according to the report, there was no doubt but that he did. To

this Robinson replied, " Yes, he ought to go for life." The witness further added that he had made different statements in regard to this conversation.

Two other witnesses testify that in the October before the trial, Robinson, in conversation with them, said that he believed Kingsbury was guilty of hiring Kitchen to fire that building as much as he believed he was alive, and he ought to be hung or sent to State prison.

It appeared that Robinson was questioned by defendant's counsel, under direction of the court, prior to his being sworn on said jury, as to his having formed or expressed any opinion in relation to the guilt or innocence of the accused, to which he answered that he had not.

The juryman being sworn, testified that he lived seven or eight miles from the defendant; that he had no interest in the church that was burned; that at the times referred to by defendant's witness, he had not seen Kitchen's confession, nor read any of the testimony, and had formed no opinion as to the guilt or innocence of the defendant; that he had said if he was guilty, he ought to go to State prison.

Most of the witnesses, called by the defendant, were impeached as unworthy of credit,—so much so, that we think reliance cannot fairly be placed on the verbal accuracy of their statements. There is a material difference between a positive and an hypothetical opinion of guilt or innocence. If the story is true, the defendant is guilty, is what any one would say when some one relates a series of facts evidencing guilt. No one reads a newspaper containing a detailed account of the commission of some crime, who might not say, if the account is true, the person charged is guilty,—yet such remark should not disqualify the person making it as a juryman. This is the most that Robinson, upon a fair review of the evidence, has done.

In *Taylor* v. *Greeley*, 3 Greenl. 204, it was proved that the juror, a short time before trial, had said that he knew all about the cause, and that the plaintiffs would and ought to recover, and that it would be a hard case for the plaintiffs if they should fail in the

action. The juryman swore he had no recollection of having used the language imputed to him, though he might have done so, and that he went upon the panel unbiased, unprejudiced, and impartial. The court refused to sustain the motion, the juror having sworn that he was impartial, and not under the influence of any impure motives. In *Ramage* v. *Ryan*, 9 Bing. 333, the court refused to grant a new trial, the juryman having denied the using of the words charged, "the whole sting of the charge" having, as Alderson, J., remarked, been "answered."

To sustain a challenge to a juryman for favor, there must be a formed and expressed opinion. "This," remarks Smith, J., in *People* v. *Stout*, 4 Parker's Cr. Cas. 117, "it is well settled in numerous cases, must be a fixed, absolute, positive, definite, settled, decided, unconditional opinion. The rule is uniformly laid down by the use of one of these words, or words of equivalent force (4 Den. 9–34; 3 Id. 133–9; 4 Wend. 229, 243; 8 Johns. 347; 1 Den. 281; 2 Virginia Cases, 378). A conditional, contingent, hypothetical, indeterminate, floating, indefinite, uncertain opinion will not do, nor an impression (*Mann* v. *Glover*, 2 Green, 195; *exparte Vermilyea*, 6 Cow. 565; *Durell* v. *Mosher*, 8 Johns. 445). In *State* v. *Potter*, 18 Conn. 167, the juror being challenged, said he had read certain newspaper accounts in relation to the supposed murder, and among them the confession of the prisoner, and that if these accounts were true, he was of opinion that a horrid murder had been committed. The challenge was overruled, and the supreme court sustained the decision. "It is perfectly evident," remarks Williams, C. J., "that he had no opinion upon the case itself, but he did think, if the facts were as stated in the prisoner's confession, a horrid murder had been committed. This is a mere hypothetical opinion." Indeed, the entire current of authorities is in accordance with these views. *Sanchez* v. *People*, 4 Parker's Cr. Cas. 535.

Objection was likewise taken that E. C. Banks, the foreman of the jury, before whom the defendant was tried, had a conversation, while the cause was on trial, in which he said "there had been a

trial last fall, and the jury did not agree ; that there were eight for condemning him, and four for acquitting him.   He said he had no doubt he hired this Kitchen to set the building afire."   The jury-man, upon being examined, denied having such conversation dur-ing the trial ; he testified that he had no conversation with any one on the subject until after the verdict was rendered ; that he had made up his mind not to talk with any one on the subject, while the cause was on trial, and that he did not ; and that the conversa-tion above referred to was after the rendition of the verdict.

It is not necessary to consider the effect of the conversation in question, as the defendant fails to satisfy us that it occurred while the cause was on trial.   A witness may easily mistake as to the day when an alleged conversation took place.   The statements of the juryman are not overcome by adverse testimony, and we have no doubt of their truth.          *Motion and exceptions overruled.*

CUTTING, DICKERSON, BARROWS, and DANFORTH, JJ., con-curred.

KENT and TAPLEY, JJ., did not concur.