COMMONWEALTH *vs.* JAMES L. SARGENT.

Suffolk. Nov. 24, 1879. — July 10, 1880. MORTON & SOULE, JJ., absent.

An indictment against S. for perjury alleged that the defendant offered himself as bail for a person under arrest for an offence, and, on his examination before a bail commissioner, made a statement under oath that he had certain personal estate of a value not less than fifteen hundred dollars, "whereas in truth and in fact said S. did not then and there have personal estate of the value of not less than fifteen hundred dollars." *Held*, that there was a good assignment of the falseness of the statement.

If an indictment for perjury contains several assignments of the falseness of the statements alleged to be made, and one of them is sufficiently set forth, the defendant has no ground of exception to the admission of evidence applicable to all the assignments, if he does not request the evidence to be confined to the valid assignment.

If an indictment for perjury alleges that the defendant, being required "to make a written statement under oath" of his property, and, "being duly sworn, did, in pursuance of said requirement, make said statement," evidence that the defendant was not sworn until after the statement was reduced to writing is not a variance.

At the trial of an indictment for perjury, on the issue whether the defendant had made false statements as to his residence and property, it appeared, by the bill of exceptions, that "A. and other witnesses for the government" testified to facts which tended to show that the statements were false. *Held*, that the defendant had no ground of exception to the refusal of the judge to rule that there were not two sufficient witnesses to the falseness of the statements.

At the trial of an indictment for perjury, the defendant testified that a statement, alleged to be false, that he owned certain property, was true. *Held*, that he could not, in support of his testimony, put in evidence that, a short time before making the statement, he had told several persons that he owned the property.

No exception lies to the refusal to give an instruction based on facts not appearing in the bill of exceptions.

INDICTMENT for perjury, as follows:

" The jurors for the Commonwealth of Massachusetts on their oath present, that on the eleventh day of January in the year of our Lord one thousand eight hundred and seventy-nine, at Boston in the county of Suffolk, one Josie Bradley was lawfully

apprehended and arrested upon the charge and offence of being a common night-walker, theretofore and then committed by her, said Bradley, in said Boston; and in a convenient place, to wit, the station-house situated on Joy Street in said Boston, duly and legally kept in custody upon the charge aforesaid; that on said eleventh day of said January, and while said Bradley was held in custody in said station-house upon the charge aforesaid, said Bradley made due application to Charles A. Barnard, Esquire, a bail commissioner within and for said county, legally authorized and duly qualified to take bail in criminal cases in said county, to be admitted to bail; that upon due hearing and examination it then and there appeared to said Barnard, as such commissioner, that the Municipal Court of the city of Boston had jurisdiction of the charge and offence upon which said Bradley had been so arrested and apprehended as aforesaid, and of the person of said Bradley; and said Bradley was then and there lawfully ordered by said Barnard, as such commissioner, to recognize, with surety in the sum of two hundred dollars, personally to appear before the Municipal Court of the city of Boston, then next to be holden at said Boston, for the transaction of criminal business, on the tenth day of said January at nine of the clock in the forenoon, there to answer to the charge aforesaid, and also in like manner personally to appear at any subsequent time or term of said court, to which the consideration of said charge might by said court be continued, if not previously surrendered or discharged; and so from time to time and term to term until the final decree, sentence or order of said court thereon, and to abide such final decree, sentence or order of said court thereon, and not to depart without leave; that thereafter, to wit, on said eleventh day of said January, and before the expiration of twenty-four hours from the time when said Bradley was so arrested upon the charge and offence as aforesaid, at said Boston, before said Charles A. Barnard, Esquire, a commissioner as aforesaid within and for said county of Suffolk, legally authorized and duly qualified to take bail in criminal cases in said county, one James L. Sargent, of said Boston, offered himself as bail and surety for said Bradley, as required by said order; that said Sargent was then and there lawfully required by said commissioner, pursuant to the course and practice of taking and approving bail, to

make a written statement, under oath, of his, said Sargent's, circumstances and property, the same being material to aid said commissioner in determining whether he would and should take and approve said Sargent as such bail and surety; that said Sargent, being then and there duly sworn by said commissioner to the requirement aforesaid, did then and there, in pursuance of said requirement, make said statement, and did then and there, being so sworn as aforesaid, falsely, wilfully, knowingly and corruptly say, depose and swear in and by said written statement as follows, that is to say: ' Commonwealth of Massachusetts.   Suffolk, ss.   Before Charles A. Barnard, commissioner to take bail in criminal cases in said county, I, James L. Sargent, of Cambridge, in the county of Middlesex and Commonwealth of Massachusetts, offer myself as surety in the sum of two hundred dollars for Josie Bradley.   And I on oath depose and say that I am more than twenty-one years of age; that I reside in Cambridge in the county of Middlesex and Commonwealth aforesaid; that my residence is situated on Union Street in said Cambridge, and is numbered 24 (meaning twenty-four) on said street, and that I have personal estate in said Cambridge; that its value is not less than two thousand dollars; that it consists of five horses and divers carriages and harnesses, three of said horses being kept by me in a stable adjoining my said residence, No. 24 (meaning number twenty-four) Union Street, and two of said horses being kept at a stable in Broadway, all in said Cambridge, and that it is subject to no incumbrance; and that the amount of my debts and liabilities of every kind, absolute and conditional, does not exceed one hundred dollars, and that there are no unsatisfied judgments or executions standing against me, and that I am under no recognizance; that my credit is good, and that I am worth in good property not less than two thousand dollars, over and above all debts, liabilities and lawful claims against me, and all liens, incumbrances and lawful claims upon my property.   James L. Sargent.'   Whereas, in truth and in fact, said Sargent did not then have personal estate in said Cambridge of the value of not less than two thousand dollars, consisting of five horses and divers carriages and harnesses, and did not then and there own three horses, then being kept by him in a stable adjoining said residence, and did not then keep

any horses in a stable adjoining said residence, and did not then keep or own any horses in any stable on Broadway in said Cambridge, and was not worth in good property not less than two thousand dollars; all of which he, said Sargent, at the said time when he so deposed and swore as aforesaid, then and there well knew. And so the jurors aforesaid, on their oath aforesaid, do present and say, that said James L. Sargent, on said eleventh day of January, before said Charles A. Barnard, Esquire, then and there having such power and authority as aforesaid, in manner and form aforesaid, did knowingly and wilfully commit wicked and wilful perjury; against the peace of said Commonwealth and the form of the statute in such case made and provided."

In the Superior Court, before the jury were empanelled, the defendant filed a motion to quash the indictment, for the following reasons: "It sets forth no offence against the law of the land. It sets forth no offence in due form of law. It wants due precision and certainty. It does not allege that the defendant falsely, wilfully, knowingly and corruptly committed the supposed offence. It does not allege that the testimony given by the defendant was material to the issue to which it is supposed to refer. No good and sufficient assignments are therein contained. It does not charge plainly and clearly the false oath, nor the oath itself. It does not allege and specify, with requisite distinctness, the particulars of the supposed false statement or statements." *Dewey*, J. overruled the motion; and the defendant excepted.

The defendant then pleaded not guilty. At the trial Charles A. Barnard, bail commissioner, testified that, on January 11, 1879, he was called upon late at night by the defendant, to go with him to a police station and bail out one Josie Bradley, who had been arrested that same night; that on arriving at the station-house he filled out, from the statements made to him by the defendant, in answer to his questions, a printed blank as contained in the indictment; that after he had filled out the blank, it was read to the defendant, and then signed and sworn to by the defendant; that he did not swear the defendant prior to the filling out and signing of said statements, to make true answers under oath to such questions as might be put to him

touching his, said Sargent's, circumstances and property; that the only oath administered to the defendant was that above de scribed. The defendant excepted to the admission of evidence that the oath had been administered after the defendant had signed the written statement, and to the admission of all of this evidence and contended that there was a fatal variance between the oath as set forth in the indictment and that proved.

John L. Howard, a police officer of Boston, and other witnesses for the government, testified as to their knowledge and investigations of the residence and property of the defendant, and that there was no such house, or number, or stable, at 24 Union Street, or any stable at the corner of Elm and Broadway, or on Broadway, where the defendant on January 11 stated that he had horses, and that the defendant had no horses in his possession. The government offered no further evidence as to the property described in the said written statement and indictment, or any further evidence on the point of ownership or the value of the property.

After all the evidence for the government was in, the defendant asked the judge to rule that the precise location was not material, and that a falsity in this respect alone would not sustain the charge; that there was no sufficient evidence to be submitted to the jury, or require the defendant to answer, as there were not two sufficient witnesses, or the equivalent thereof, to the falsity of the alleged statements, or the material points of these assignments of perjury. The judge gave the first ruling requested, and declined to give the others, unless the defendant would rest his case.

The defendant then testified that he formerly resided, and still claimed a residence, in Cambridge, at the house of his brother, though for the last year and a half he had lodged and boarded in Boston; that this residence was, in May last, at No. 19 Union Street, afterwards at his brother's house, corner of Elm Street and Hampshire Street, which was but a short distance from Union Street, or the corner of Elm Street and Broadway; that there was a stable connected with both houses, No. 19 Union Street and that on the corner of Elm Street and Hampshire Street; that he and his brother together owned the horses mentioned in the defendant's statement, and kept the same at these

stables; that at the time he made this statement he thought the house was on the corner of Elm Street and Broadway; that he stated his qualified interest in this property to the commissioner; that he did not intend to falsify, and believed his statement to be true; that the same was made in good faith, and under the explanations and qualifying circumstances given to the commissioner; and that he honestly believed the value of the property to be as given.

The defendant was asked by his counsel whether or not he had, a short time prior to this statement, told several persons that he owned or had an interest in the horses, and what it was. The question was objected to, and excluded.

The defendant's brother testified that he and the defendant owned the horses; and there was other evidence that they were kept as the defendant testified, and as to the value of the horses.

The government contended that the defendant did not own any of the property set forth by him, and that, if he did own any portion of it, the portion owned by him was well known to him to be of much less value than stated by him, and that the testimony of the defendant and his brother, that the defendant was a joint owner with his brother of said property, was false; and these questions were argued to the jury.

After the evidence was in, the defendant asked the judge to instruct the jury as follows: "1. That, while it may be according to the practice and not unlawful to take the written statement of the party justifying as bail, there is no law requiring this course to be pursued, and perjury does not consist in the falsity of the written statement, but, on the whole testimony, on the material assignments. 2. That, unless the government proves that the written statement is in substance the defendant's whole testimony on the material assignments, there can be no conviction. 3. That, even if the defendant swore rashly, hastily, inconsiderately and ignorantly, and without any reasonable cause, if he believed his statement to be true, it would not constitute the offence charged, and all this must be weighed from the standpoint of the defendant, and not of the jury; and that there was no evidence of two witnesses, or the equivalent thereof, to warrant a conviction."

The judge declined to give these instructions, but instructed the jury as follows : " If the jury are satisfied, beyond a reasonable doubt, that the defendant wilfully, corruptly and falsely swore to the truth of the material statements as to property set forth in the written statement signed by him, knowing well at the time that the same was untrue, they should convict; and that the evidence should be considered from the standpoint of the defendant, and not that of the jury or court. To convict the defendant, the government must introduce the testimony of two witnesses showing the falsity of the material statements, or of one witness and facts equivalent to the evidence of a second witness.

" If the defendant believed at the time that the property was of great value, the same being in Cambridge, at or near the place described, the precise location not being material, although he may have fixed the value too high by mistake, inadvertency or error of judgment, or carelessly; yet, unless it was so fixed designedly and with a corrupt and wilful intent to mislead the commissioner and induce him to accept the defendant as bail, the jury were not justified in adjudging him guilty. But if the defendant intentionally or recklessly, with gross carelessness, well knowing the value to be much less, placed the value of the property with the said intent at the sum stated, that would be sufficient to convict him of having wilfully, corruptly and falsely sworn to the truth of the statement signed by him, and would warrant their finding him guilty of the crime." Other rulings were given as to the question of ownership, which were not excepted to.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*C. H. Hudson & E. W. Sanborn*, for the defendant.

*G. Marston*, Attorney General, *& F. H. Gillett*, Assistant Attorney General, for the Commonwealth.

ENDICOTT, J. 1. The motion to quash was rightly overruled. The assignment of the falseness of the representation made by the defendant in his sworn statement before the commissioner, that he had personal estate in Cambridge of a value not less than fifteen hundred dollars, consisting of five horses, and divers carriages and harnesses, preceded by the words " whereas in

truth and in fact said Sargent did not," &c., was a good assign ment of perjury, and the indictment could not be quashed on the ground that "no good and sufficient assignments are contained therein." Whether the other assignments of the falseness of the defendant's statements, in regard to the places where the horses were kept and the amount of his property, should have been each preceded by the formal words, "whereas in truth and in fact," it is unnecessary to consider. *Commonwealth* v. *McLaughlin*, 122 Mass. 449. *Commonwealth* v. *Johns*, 6 Gray, 274. The defendant at the trial contended there was no legal and sufficient assignment, and objected to any evidence in support of any assignment; but as there was a good assignment, evidence was properly admitted. And the defendant did not afterward ask to have the evidence confined to such assignment. See *Wood* v. *People*, 59 N. Y. 117.

2. In an indictment charging a defendant with making false statements in writing under oath, which are material, it can make no difference that the statements made were reduced to writing and signed before or after the oath was administered. The offence consists in the false statement of material facts, without reference to the mode of statement, whether oral or written. *Commonwealth* v. *Hatfield*, 107 Mass. 227. *Commonwealth* v. *Carel*, 105 Mass. 582.

But the defendant contends that this indictment charges that the oath was administered before signing, and the evidence that it was administered afterwards was not admissible, on the ground that matters of description, though unnecessarily set forth, must be proved precisely as alleged.

We do not so read the indictment. It does not allege in terms that the defendant was first sworn, nor that he was sworn to make true answers to such questions as should be put to him, as in *Smith* v. *People*, 1 Parker C. C. 317, relied on by the defendant, but that he was required to make a written statement under oath of his circumstances and property. The fair meaning of this is, that he was to make a statement in writing to be signed and sworn to by him. The indictment then proceeds to charge, that he, "being then and there duly sworn by said commissioner to the requirement aforesaid, did then and there in pursuance of said requirement make said statement, and did then

and there, being so sworn as aforesaid, falsely, wilfully, knowingly and corruptly say, depose and swear in and by said written statement as follows : " and the statement duly signed is set forth at length. The clause, " being then and there duly sworn to the requirement aforesaid," means simply that he was duly sworn as required. The concluding clause is to be construed in connection with what precedes it, and, after alleging that he made the statement under oath, it alleges that he deposed and swore in and by said statement as follows, that is, that he made the written statement and made oath to it. The charge therefore is, that he made a sworn statement in writing as required, and such a statement could only be furnished after it was made, signed and sworn to.

3. The court was not bound, as matter of law, to rule at the close of the government's case that there was no sufficient evidence to be submitted to the jury, for the reason that there were not two sufficient witnesses, or the equivalent thereof, to the falseness of the defendant's statements. The bill of exceptions states, that John L. Howard, and other witnesses for the government, testified to their knowledge of and investigations in regard to the defendant's residence and property. And the presiding judge stated, in his charge to the jury, that to convict the defendant the testimony of two witnesses, showing the falseness of the material statements, or of one witness and facts equivalent to the evidence of a second witness, was necessary.

4. It was not competent for the defendant to put in his own previous declarations, that he owned or -had an interest in the horses. He had already stated what his interest in the horses was, and he could not fortify his own testimony by such declarations. It does not appear that they were made in connection with any act, or were part of the res gestœ, as in Commonwealth v. Rowe, 105 Mass. 590.

5. The bill of exceptions does not find that the defendant gave any testimony before the commissioner, bearing on the question of his property, except what appears in the written statement set out in the indictment. And the presiding judge was not required to give the second instruction requested, no facts appearing which rendered such an instruction necessary. Wells v. Prince, 15 Gray, 562.

6. The third ruling requested was in substance given, and we fail to find that the defendant has any ground of exception to the instructions upon which the case was submitted to the jury.

We have considered all the objections which the defendant presented in his argument before us, and, in the opinion of a majority of the court, the entry must be

*Exceptions overruled.*