Doyle, J.
The plaintiff in error was indicted at the May term, 1882, for subornation of perjury. lie was tried at the January term, 1883, convicted and sentenced to a term in the penitentiary. In his petition in error, filed in this court by leave, he makes several assignments of error as occurring upon and subsequent to the trial, to his prejudice. We will consider but two of them. First. Overruling his motion in arrest of judgment, which presents the question of the sufficiency of the indictment, and second, excluding the evidence of Henry Dilcher, offered by the defense.
First. The indictment charged that one James M. Stewart, in his deposition, taken in Athens county, to be used in an action pending in Meigs county “ in a matter material to said cause, did falsely, willfully and corruptly depose, declare and swear certain matters then and there to be fact, to wit: that he the said James M. Stewart, met Col. Martin, (meaning JolinF. Martin the husband of said Mary Martin) in September, 1880, at Deer Lodge city, in Deer Lodge county, Montana, during two or three days; that he (the said Stewart) met him (the said Col. Martin) several times, and that they (the said Stewart and Col. Martin) conversed together and had mutual recognition ; whereas in truth and in fact the said James M. Stewart did not meet the said Col. Martin in September, 1880, at Deer Lodge city, Montana, during two or three days; and said James M. Stewart did not then and there meet the said Col. Martin several times, and they the said James M. Stewart and Col. Martin have mutual recognition, he the said James M. Stewart well knowing,” &c., and then proceeded by language sufficient under the authority of Stewart v. State, 22 Ohio St. *133 477, to charge that Dilcher suborned said Stewart to commit such perjury.
The action in Meigs county, in which the deposition of Stewart was taken, was by Mary Martin against Henry Dilcher, to procure the assignment of dower in lands of the defendant, formerly owned by John F. Martin, the husband of the plaintiff. She relied, in her petition, upon the legal presumption of the death of her husband, growing out of his absence for seven years without being heard from. The answer alleged that he was still in life. The materiality of Stewart’s testimony is apparent.
The defendant based his motion in arrest of judgment upon the grounds that the facts stated in the indictment do not constitute an offense against the laws of Ohio, and that such indictment is insufficient in law.
It is urged here that the court erred in overruling that motion ; that the indictment does not sufficiently negative the truth of Stewart’s testimony, the negations being in the nature of negatives pregnant, leaving an admission that all that was material in Stewart’s testimony was true, to wit: that Col. Martin was alive, and that the witness had seen him during the seven years.
If it could be maintained that such was the only material part of the testimony, and it so appeared from the indictment itself, the objection would be well taken. But we understand the law to be otherwise. A witness may be guilty of perjury, not only by swearing corruptly and falsely to the fact which is immediately in issue, but also to any material circumstance which legitimately tends to prove or disprove such fact; or to any circumstance which has the effect to strengthen and corroborate the testimony upon the main fact, or which affects the credit of the witnesses giving such testimony.
“ And it is spoken of as a reasonable opinion that a witness may be guilty of perjury in respect of a false oath concerning a mere circumstance, if such oath has a plain tendency to corroborate the more material part of the evidence.” See 3 Russell on Crimes, 12.
“ Where the evidence is simply to explain how it was the witness knew the thing which he states — as where, testify *134 ing to an alibi, lie mentions the person’s residence and habits to show he could, not be mistaken on the main point — here, since the incidental matter is calculated to incline the jury to give a more ready credit to the substantial part, it will sustain a conviction for perjury if willfully false.” Bishop Cr. Law, §§ 1034, 1037; Reg. v. Tyson, Law Rep. 1 C. C. 107; Reg. v. Overton, C. & M. 655; 45 E. C. L. 83; Commonwealth v. Grant, 116 Mass. 17; Commonwealth v. Sargent, 129 Mass. 115; Wharton Cr. Law, §§ 2229, 2230; Cr. Pr. & PI. § 158. It is not necessary to aver wherein the alleged false testimony was material; it is sufficient to allege generally that it was material, and the indictment need not charge more than is necessary to adequately express the offense. It is not necessary that the testimony upon which perjury can be predicated, must have the effect, if true, of establishing or deciding the matter in issue. It is sufficient if it has a legitimate bearing on that isssue. If it tends, within the rules of law to influence the court or jury in deciding that issue, it is material.
The material inquiry in the Meigs county case, as shown by the evidence on the trial, was whether Martin was alive — ■ whether he had been seen or heard from during the preceding seven years. Stewart’s testimony that he had seen him, without fixing time, place or circumstances, might have been wholly insufficient. To corroborate and strengthen that statement he said he saw him, not once, in passing, a long time before, at a distance (that would leave room for a conclusion of mistaken identity), but several times, on two or three different days, at Deer Lodge, in September, 1880, that they had spoken together and mutually recognized each other. The legitimate effect of each one of these statements was to strengthen his testimony as to the main fact, to make it impossible that he could be mistaken. Each one, was in that sense, and within the rule stated, material to the issue being tried, and being so material they were divisible, and perjury may be predicated on each.
While the indictment might be better drawn, there'is a negation of the truth of the testimony that he had seen Martin at Deer Lodge in September, 1880, several times, on two or three *135 different days; or that there ivas any mutual recognition, and hence sufficient to support a conviction.
Second. The notice to take depositions in the dower case named Thursday, February 2, as the time of commencing the same. Stewart, did not appear on Thursday, and to keep the notice alive, Dilcher, plaintiff in error, was sworn and an immaterial question was put to him. Stewart not appearing on Friday another question was put to Dilcher for the same pin-pose.' On Saturday Stewart was examined in chief and cross examined on Monday following. On the trial of plaintiff in error one Woodyard testified for the state, to having several interviews with the accused, on the Thursday and Friday already mentioned, during which the depositions were kept open and that in one of such interviews the accused admitted to him (Woodyard) that at Harrison ville, Meigs county, Stewart had informed the accused that he had not seen or recognised Martin in Montana. This evidence, if believed, would have a strong tendency to establish knowledge on the part of the accused, that the testimony of Stewart was false. On cross examination Woodyard was asked, “Did you not on Saturday or Sunday, while Stewart’s deposition was being taken, at Pomeroy, in Meigs county, propose to Henry Dilcher, Senior, the father of defendant, and the defendant in the cause wherein said Stewart’s depositions were being taken, that if he would pay you for your services you would aid in procuring the testimony of said Stewart in said cause?” to which he answered, “I did not.” Henry Dilcher was called as a witness, and the defense at the proper time, offered to prove by him that Woodyard did make that proposition, at the time and place named, but the court refused to allow it to be done, and the defendant excepted.
It is insisted that the matter was so collateral that the defense was bound by Woodyard’s answer and could not contradict him therein. This is clearly wrong: the testimony should have been admitted.
The alleged proposition was made at Pomeroy. It does not appear that Woodyard knew that Stewart was giving his testimony or had consented to give it, or that a subpeena had *136 been served on him. One of two things must be true if such offer was made , and the jury were the proper judges as to which one. The witness made the offer to procure the presence and testimony of Stewart, not kno.wing that such testimony, if favorable to Dilcher, would be false, — in which case it would be in direct conflict with his testimony on the trial, — or he made the offer corruptly, seeking for a compensation to aid in suborning a perjury, and, failing to obtain the consideration from the father, testified to the guilty knowledge of the son, in which case the jury had the right to the fact with any legitimate inference from it, of the state of feeling of the witness, and affecting his credibility as a witness.
Conduct inconsistent with the testimony of a witness, may be shown as well as former statements thus inconsistent. Certainly Woodyard’s proposal, if his services were paid for, to aid in getting Stewart’s testimony, was inconsistent with his statement to the jury, that both he and Dilcher know that such testimony would be false, unless such proposal was corruptly made. But the court was not the judge of that. The jury might, when all the facts were given, conclude that Woodyard was honest in that proposal, but corrupt in his testimony.
If the language or circumstance was capable of different constructions, the jury were to give the right one. The evidence was not to be excluded if in either aspect it tended to contradict. State v. Kingsbury, 58 Maine 242.
Upon no ground can the exclusion of this testimony be justified. It may be that, if it had been allowed, it would not have changed the conclusion to which the jury came, but they had a right to it for what it is worth. See Gaines v. Commonwealth, 50 Pa. St. 319; Commonwealth v. Bean, 111 Mass. 438; 1 Wharton Law of Ev. § 554; Hayden v. Stone, 112 Mass. 346.

Judgment reversed and cause remanded for new trial.